592 F.2d 693
 7 O.S.H. Cas.(BNA) 1001, 1979 O.S.H.D. (CCH) P 23,281
UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC, Petitioner,
v.
Ray MARSHALL, Secretary of Labor, U. S. Department of Labor,
and Doctor Eula Bingham, Asst. Secretary of Labor,
O.S.H.A., Respondents.
 No. 78-2452.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 20, 1978.
Decided Jan. 10, 1979.
 
 George Cohen, Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., for petitioner United Steelworkers in No. 78-2452.
 Nancy L. Southard, Benjamin Mintz, U. S. Dept. of Labor, Washington, D. C., for Department of Labor in Nos. 78-2452 and 78-3475.
 Claude D. Montgomery, Asst. Gen. Counsel, International Union, United Automobile, Aerospace & Agriculture Implement Workers of America, Detroit, Mich., UAW Applicants for Intervention.
 Standish F. Medina, Jr., Debevoise, Plimpton, Lyons & Gates, New York City, for petitioners in No. 78-3475.
 Before GIBBONS, ROSENN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 This case presents the problem of the appropriate court to review agency action when petitions for review have been filed in this court and in the Court of Appeals for the Fifth Circuit. We conclude that the agency action in question should be reviewed by the Court of Appeals for the District of Columbia Circuit.
 
 
 2
 On November 9, 1978, the Occupational Safety and Health Administration of the United States Department of Labor (OSHA) held separate briefings for labor union representatives and industry representatives at which it disclosed the substantive contents of a proposed occupational health standard regulating employee exposure to lead, a highly toxic substance. The United Steelworkers of America, AFL-CIO-CLC (Steelworkers) had participated in the rulemaking proceedings in which the proposed standard was developed, representing members exposed to lead in industrial processes. The Lead Industries Association, Inc. (LIA), a trade association of manufacturers smelting or using lead, and Chloride Incorporated, a manufacturer, had also participated in those proceedings. Counsel for the Steelworkers had in the rulemaking proceedings sought a standard requiring a lower exposure level than OSHA was about to propose, while counsel for LIA and Chloride, Inc. had sought a standard less stringent in several respects. LIA is the chief spokesman for all employers in the primary lead industry. Both sides of the dispute over the standard were aware that the proposed standard would be filed in the Office of the Federal Register on November 13, 1978, and both sides anticipated filing a petition for review pursuant to § 6(f) of the Occupational Safety and Health Act, 29 U.S.C. § 655(f). Each side, therefore, had a representative at the Office of the Federal Register when it opened for business on November 13, 1978. Aware of the provisions of 28 U.S.C. § 2112(a), each side had prepared in advance a petition for review for filing in the court of appeals of its choice. Counsel for LIA and Chloride chose the Fifth Circuit, while counsel for the Steelworkers chose the Third Circuit. When at 8:45 a. m. the OSHA standard was stamped filed at the Office of the Federal Register, counsel for the Steelworkers, having arranged for an open telephone line to a public telephone near the entrance to the Third Circuit Clerk's Office, instructed its representative in Philadelphia to file the Steelworkers' petition for review. The Third Circuit Clerk's office marked the petition filed at 8:45 a. m., eastern standard time. Counsel for LIA and Chloride, Inc., having arranged for an open line to a telephone near the entrance of the Fifth Circuit Clerk's office in New Orleans, instructed its representative there to file their petition for review. It was marked filed at 7:45 a. m., central standard time. Thus, the court records of the respective clerks' offices reflect a dead heat in the race to the courthouse.
 
 
 3
 The governing statute provides that "(i)f proceedings have been instituted in two or more courts of appeals with respect to the same order the . . . commission . . . . concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted." 28 U.S.C. § 2112(a). On November 29, 1978, the Solicitor of Labor informed the Chief Judges of both courts by letter that in the Labor Department's view there is no court of first filing. The letter called to the courts' attention the additional provision in 28 U.S.C. § 2112(a) that "(f)or the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals," and suggested consultation between the respective courts as to which of the two should make a determination as to venue for the review of the lead standard.
 
 
 4
 The petitions for review were referred to panels in each court. Following the procedure adopted by the District of Columbia Circuit in American Public Gas Ass'n v. FPC, 180 U.S.App.D.C. 380, 555 F.2d 852 (1976), this court conferred with the Fifth Circuit panel which on December 14, 1978 filed a per curiam opinion on the LIA petition for review as follows:
 
 
 5
 Having conferred with the judges of the Third Circuit, and by agreement with them, we defer proceedings pending a decision by the Third Circuit Court of Appeals designating the forum to consider and decide this matter.
 
 
 6
 On December 20, 1978, we heard argument on the question of the proper forum, during which counsel for LIA and Chloride, Inc. advanced several arguments in support of its contention that the case should be heard in the Fifth Circuit.
 
 
 7
 The first contention of LIA is that, despite the fact that the court records suggest a simultaneous filing in both courts, in fact the filing in New Orleans occurred some ten seconds prior to that in Philadelphia. In support of that contention LIA filed in the Fifth Circuit affidavits by the persons who comprised its chain of communication between the Office of the Federal Register and the Clerk's Office in New Orleans tending to suggest that their timepieces were more accurate and their communications were more rapid than those of their Steelworker rivals. Counsel for the Steelworkers filed opposing affidavits tending to suggest that at best the race produced no more than a dead heat. Unlike race tracks, however, courts are not equipped with photoelectric timers, and we decline the invitation to speculate which nose would show as first in a photo finish.
 
 
 8
 The duty of determining who was first to file falls, under the express provisions of 28 U.S.C. § 2112(a), upon the agency whose proceedings are under review. Prior to 1958, under many statutes providing for judicial review in the courts of appeals, when petitions were filed in several jurisdictions it was possible for the agency, by filing the record in one of them, to select its forum. One purpose of § 2112(a) was to eliminate that possibility by substituting a mechanical first filing rule. What has resulted in practice has been the substitution of forum shopping by counsel for petitioners by the exercise of technological ingenuity in achieving first filing. When counsel succeeds in obtaining an earlier time stamp from the Clerk of one court the agency under review must file there. Where ingenuity has produced times of filing recorded as simultaneous, but one petitioner challenges the accuracy of the record time, three constructions of § 2112(a) are possible. We could hold that the agency under review must hold a hearing to determine who filed first. This would reintroduce the problem of an interested agency making a decision as to the forum. We could hold that one of the reviewing courts could, when the fact of simultaneous filing was disputed, hold a hearing. But courts of appeals lack the ready means of holding hearings on disputed factual matters, and such a course would inevitably cause delays in the reviewing process. Finally, we could, and do, adopt a rule that in the absence of extraordinary circumstances, the official notations of time of filing are conclusive. When those notations show a simultaneous filing the agency should proceed, as did the Labor Department here, to notify both courts, who by agreement will determine which one will determine venue "(f)or the convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a).
 
 
 9
 LIA also contends that "the convenience of the parties in the interest of justice" mandates transfer to the Fifth Circuit. In support of this contention it urges that the statute gave LIA a choice of forum, and that where it did not quite succeed in effectuating that choice because the race to the courthouse resulted in a tie, the tie should be broken by weighing the relative aggrievement of the two petitioners. The Steelworkers, according to LIA, achieved in the standard as promulgated by OSHA most of the employee protection they sought, whereas the standard is significantly more stringent than the industry thinks necessary. Since LIA members suffer greater aggrievement, the argument continues, "the interest of justice" demands that its choice of a forum prevail. Other courts have limited the inquiry into the respective merits of the petitions to a determination whether the petitioning party's claim of aggrievement is so frivolous or insubstantial as to undercut the assumption of a good faith petition for review. E. g., Ball v. NLRB, 299 F.2d 683, 687 (4th Cir.), Cert. denied, 369 U.S. 838, 82 S.Ct. 868, 7 L.Ed.2d 843 (1962); UAW v. NLRB, 126 U.S.App.D.C. 11, 373 F.2d 671, 673-74 (1967); Public Service Comm'n v. FPC, 153 U.S.App.D.C. 195, 472 F.2d 1270, 1272 (1972). The Steelworkers petition meets that minimal threshold, for the Union has at all times advocated a more stringent standard than that adopted by OSHA. Any more refined inquiry would require that the court considering a venue matter take into account the relative merits of the substantive positions being advanced. Certainly the reference to "the interest of justice" in § 2112(a) was not intended to require such a preliminary examination of the merits. Rather the entire clause is directed at a balancing of competing claims of convenience in the prompt disposition of the petitions.
 
 
 10
 LIA suggests that we should take into account the Steelworkers' motivation in filing in the Third Circuit. That motivation purportedly is a desire to avoid application to the OSHA lead standard of the cost/benefit criteria announced in American Petroleum Institute v. OSHA, 581 F.2d 493, (5th Cir. 1978), Cert. granted, ---- U.S. ----, 99 S.Ct. 1212, 59 L.Ed.2d 454. LIA candidly concedes, however, that its motivation in filing in the Fifth Circuit was the presumed benefit its members would derive from that precedent. We have not been told why LIA's motivation for seeking what it suspects will be a favorable forum should be less rigorously scrutinized than that of the Steelworkers. Were we to consider such motivation to be relevant to the venue determination we would have to conclude that the scales are evenly balanced. But more fundamentally, we think it would be improper, in making a venue determination "(f)or the convenience of the parties in the interest of justice" to take into account factors bearing on the merits of the agency action under review rather than factors bearing on convenience in carrying on the litigation. We decline to do so. Whether the interpretation of the statute announced by one court of appeals differs from that of another, and which interpretation is more just, are not matters properly relevant to a § 2112(a) transfer decision.
 
 
 11
 Grasping at straws, LIA suggests that the Fifth Circuit's recently passed Local Rule 13.2, which dispenses with the preparation of an appendix, will make litigation in that court significantly less expensive. Under Fed.R.App.P. 30(f) all courts of appeals may by order dispense with an appendix in any case. The Fifth Circuit retains the authority to ask for one. Since the OSHA rulemaking record in the lead standard case is represented to encompass over 20,000 pages, any court is likely to entertain an application for an order requiring some form of abbreviated appendix. We do not regard Fifth Circuit Local Rule 13.2 as a significant factor in the venue decision. Indeed we may speculate reasonably that if other courts of appeals began to rely on that rule as a reason for transferring cases to the Fifth Circuit it would soon be repealed.
 
 
 12
 Finally LIA urges that a large number of employers aggrieved by the lead standard, including some who have moved to intervene in this review proceeding, have plants located in the Fifth Circuit. The Steelworkers counter this factor by observing that it has fifteen thousand members working in plants in the Third Circuit which will be covered by the standard. Neither the location of the plants nor the location of the workers bears, however, on the issue of relative convenience for the review of an OSHA standard adopted pursuant to § 6 of the Act. Review is confined to the agency record.[1] Thus neither the officials of the employers nor the affected employees will appear in court. The only significant convenience factor which affects petitioners seeking review of rulemaking on an agency record is the convenience of counsel who will brief and argue the petitions.
 
 
 13
 Aside from that factor, three possible institutional considerations occur to us. One is the relative expertise of a given court of appeals in the area of law under review. We think that Congress, by providing for review in the circuit wherein the petitioner resides or has his principal place of business, 29 U.S.C. § 655(f), has implicitly determined that OSHA litigation should not be concentrated in a single "expert" court. Thus we think it would be improper to speculate that any circuit court of appeals is more expert in OSHA matters than another. Accord, Public Service Comm'n v. FPC, supra, 472 F.2d at 1272-73. A second institutional consideration is the relative state of the dockets of those courts to which the case might be relegated. But since no court which is likely to be convenient to counsel has an uncrowded docket, that consideration is essentially neutral. A third institutional consideration is the desirability of concentrating litigation over closely related issues in the same forum so as to avoid duplication of judicial effort. In her November 29, 1978 letter the Solicitor of Labor informed us that on November 21, 1978, LIA filed in the District of Columbia Circuit a petition to review ambient air quality standards for lead issued pursuant to the Clean Air Act by the Environmental Protection Agency (EPA). 43 Fed.Reg. 46246 et seq. (October 5, 1978). Under that statute, in contrast to the Occupational Safety and Health Act, judicial review of ambient air standards may be brought only in the Court of Appeals for the District of Columbia. 42 U.S.C. § 7607(b)(1). Thus there is no possibility of transferring the review proceedings dealing with air quality standards for lead to this or any other court. Since it seems likely that the District of Columbia litigation will involve issues with respect to the health need for limiting exposure to lead similar to those raised in the LIA and Steelworkers petitions pending here and in the Fifth Circuit there appears to be a strong institutional interest in having these petitions considered in the District of Columbia forum.
 
 
 14
 That institutional interest would not in our view suffice to justify a serious imposition of inconvenience upon those counsel most closely involved in the litigation. But in this instance the District of Columbia is obviously a convenient forum. The agency and its counsel are located there. The law firm which represents the Steelworkers, and which was the leading participant in the agency proceedings on the side urging more stringent standards, is located in Washington. The counsel for LIA, who was the leading participant in the agency proceedings on the side urging less stringent standards, is located in New York City. As between Washington and Philadelphia there is no measurable difference in convenience. For us the institutional interest in having one court consider air standards for lead issued by both federal agencies issuing such standards, then, is decisive.
 
 
 15
 It will therefore be ordered (1) that the petition for review of the United Steelworkers of America be transferred to the Court of Appeals for the District of Columbia Circuit, (2) that the Occupational Safety and Health Administration file in that court the record in the proceedings which culminated in the order to which that petition for review is addressed, and (3) that a copy of the judgment of this court and of this opinion be forwarded to the Court of Appeals for the Fifth Circuit.
 
 
 
 [1]
 "The determinations of the Secretary shall be conclusive if supported by substantial evidence in the record considered as a whole." 29 U.S.C. § 655(f)