LIQUOR SALESMEN'S UNION LOCAL 2 OF the STATE OF NEW YORK, Distillery, Rectifying, Wine & Allied Workers' International Union, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Charmer Industries, Inc., et al., Intervenors.

CHARMER INDUSTRIES, INC., Star Industries, Inc., Standard Wine & Liquor Co., Inc., Peerless Importers, Inc., and National Distillers Distributing Co., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

PARK & TILFORD & MOTEL & CLUB, DIVISIONS OF KNICKERBOCKER LIQUOR CORP., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

AMALGAMATED TRANSIT UNION, AFL–CIO, LOCAL DIVISION 1309, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Bayshore Transit Management, Inc., d/b/a National City Transit, Intervenor.

Nos. 80–1746, 80–2152, 80–2278 and 80–2085.

United States Court of Appeals, District of Columbia Circuit.

March 31, 1981.

Allen B. Roberts, New York City, for petitioners in No. 80–2152, and intervenors in No. 80–1746.

Joseph Semo, Washington, D. C., for petitioner in No. 80–1746.

Charles O. Strahley, New York City, for petitioners in No. 80–2278.

Richard D. Prochazka, San Diego, Cal., for petitioner in No. 80–2085.

Richard M. Freeman, San Diego, Cal., for intervenor in No. 80–2085.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent in Nos. 80–1746, 80–2152, 80–2278, & 80–2085.

Before TAMM, ROBB and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

These cases are petitions for review of two separate orders of the National Labor Relations Board (Board). In No. 80–2085, the Board granted the General Counsel's motion for summary judgment in favor of the union, awarding the union all the relief it sought. The union filed a petition for review in this court alleging that it was aggrieved by the failure of the Board to rule specifically on the union's motion for summary judgment. In the consolidated cases Nos. 80–1746, 80–2152 and 80–2278, the Board gave another union all the relief sought from the Board save for an award of attorney's fees. The union filed a petition for review in this court, alleging that it was aggrieved by this refusal of the Board to grant special relief to the union.

In both cases, the employer moved to transfer the proceedings to another circuit pursuant to 28 U.S.C. § 2112(a) (1976).[1] Because neither union was "genuinely aggrieved" by the Board order of which it sought review, this court transferred No. 80–2085 to the Ninth Circuit and Nos. 80–1746, 80–2152 and 80–2278 to the Second Circuit "[f]or the convenience of the parties in the interest of justice."

## I. FACTS.

### A. No. 80–2085.

On the basis of an unfair labor practice charge filed March 17, 1980 by the Amalga-mated Transit Union, Local 1309 (Local 1309), the Board on April 15 issued a complaint and notice of hearing, alleging that Bayshore Transit Management (Bayshore), had refused to bargain with Local 1309 as the certified representative of its employees. On May 9, 1980, Local 1309 filed with the Board a motion for summary judgment, alleging in support that:

(1) Bayshore was seeking to litigate issues in the unfair labor practice proceeding which were or could have been litigated in prior representation proceedings;

(2) Bayshore did not assert the existence of any recently discovered facts or special circumstances justifying litigation; and

(3) Bayshore admitted in its answer that it had refused to bargain at all with Local 1309.

One week later, May 16, 1980, the General Counsel of the Board also filed a motion for summary judgment. Its allegations were identical to those contained in Local 1309's motion for summary judgment.

The Board granted the General Counsel's motion for summary judgment, August 27, 1980, *for precisely the same reasons put forward by both Local 1309 and General Counsel.* It ordered Bayshore to cease and desist from its unfair labor practice, to bargain collectively with Local 1309 upon request, and to post notice. Decision and Order, *Bayshore Transit Mngmt., Inc., and Amalgamated Transit Union,* 251 N.L.R.B. No. 136 (August 27, 1980).

Local 1309 filed in this court a petition to review the Board's order, September 9, 1980. Bayshore filed its petition to review the order September 22, 1980, in the Ninth Circuit (9th Cir. No. 80–7513). On Novem-

---

1. Section 2112(a) provides, in relevant part,

   If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceed-ings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

ber 3, 1980, the Board filed the certified record with this court as the court of first filing, pursuant to 28 U.S.C. § 2112(a) (1976).

Bayshore intervened in this court and on October 23, 1980, filed its motion to dismiss or transfer this case to the Ninth Circuit. The gist of Bayshore's motion was that Local 1309 was not a "person aggrieved" within the meaning of § 10(f) of the National Labor Relations Act (Act), 29 U.S.C. § 160(f) (1976), and therefore lacked standing to petition this court for review. Alternatively, Bayshore sought to have this case transferred under authority of 28 U.S.C. § 2112(a) to the Ninth Circuit "for the convenience of the parties in the interest of justice." Bayshore pointed out that, as the truly aggrieved party, it had properly filed a petition to review the Board's order in the Ninth Circuit. Both the company and Local 1309 are located in San Diego, California, where the alleged unfair labor practice took place. The law firms engaged by the parties to represent them are also located in San Diego. There do not appear to be any countervailing considerations.

### B. *Nos. 80–1746, 80–2152, 80–2278.*

On September 21, 1979, an Administrative Law Judge (ALJ) found that the unilateral promulgation of new c. o. d. collection procedures by liquor wholesalers imposed substantial additional duties and burdens on the wholesalers' liquor salesmen. The ALJ found this unilateral change in working conditions to violate §§ 8(a)(1), (a)(5) of the Act, 29 U.S.C. §§ 158(a)(1), (a)(5) (1976). The Board on June 30, 1980, affirmed the findings of the ALJ and adopted her recommended order, which directed the companies to cancel the new working conditions, restore the *status quo ante,* make whole the employees for loss of time and expenses incurred as a result of the working conditions, rescind any disciplinary action, bargain with Liquor Salesmen's Union Local 2 (Local 2) upon request, and post the appropriate notice. Decision and Order, *Charmer Industries, Inc., et al. and Liquor Salesmen's Union, Local 2,* 250 N.L.

R.B. No. 31 (June 30, 1980). The Board did not specifically address, and therefore left undisturbed, the finding of the ALJ that, because the facts did not support the allegation of frivolous litigation, Local 2 was not entitled to attorney's fees.

Local 2 filed in this court on July 3, 1980, a petition to review the order of the Board denying attorney's fees to the Union. (D.C. Cir. Docket No. 80–1746). On July 29, 1980, Charmer Industries, Inc., and four other liquor wholesalers (the Companies) filed a petition to review the Board's order in the Second Circuit. By stipulation of the parties this later-filed petition was transferred to this court, pursuant to 28 U.S.C. § 2112(a). (D.C.Cir. Docket No. 80–2152). A later petition in the Second Circuit filed by Park & Tilford & Motel & Club, Divisions of Knickerbocker Liquor Corp., was transferred to this court October 20, 1980 by the Second Circuit. (D.C.Cir. Docket No. 80–2278). This court consolidated all three cases.

The Companies intervened in No. 80–1746 and on October 21, 1980, moved to transfer the consolidated proceedings to the Second Circuit. The Companies argued that this court should not respect Local 2's first-filed petition because Local 2 was not "genuinely aggrieved." The Second Circuit, the Companies insisted, is a more convenient forum. The Companies and Local 2 are located in New York, counsel for both parties reside in New York, and the alleged unfair labor practices took place there as well.

## II. SECTION 2112(A) AND THE FORUM PREFERENCE IN LABOR CASES.

These cases graphically illustrate a problem which has plagued the federal courts for years and which now approaches epidemic proportions: the forum shopping inherent in judicial review of administrative action. A party who has substantially if not completely prevailed before the agency files a petition for review—ofttimes within seconds of the agency order—solely to guarantee that review will occur in the forum of its choice. This initial filing automatically

triggers 28 U.S.C. § 2112(a), the venue provision governing judicial review of administrative action, requiring the agency to file its record in the court of first filing, and directing all other courts of appeals to transfer to the court of first filing any later-filed petitions for review of the same order. Although the court of first filing is authorized to transfer the petitions to any court of appeals "for the convenience of the parties in the interest of justice," the transfer authority is not always exercised, even when appropriate.

It is a commonly held belief among members of the bar that the courts of appeals read into § 2112(a) a rebuttable presumption that the court of first filing will also decide the case. Whether or not this view is an accurate one, all too often the court of first filing unwittingly allows § 2112(a) to be used as a tool by private parties to forum-shop among the circuits. We take this opportunity once again[2] to express our disapproval of this "unseemly" practice, and make clear that this court intends to utilize the statutory and inherent authority at our disposal to curb this abuse.

■ Where a party aggrieved by an order of the Board seeks review of that order, the court will generally respect the petitioning party's choice of forum. But where there are two petitions for review of the same order filed in different circuits, the wishes of both parties cannot, of course, be accommodated. Section 2112(a) permits the court of first filing to transfer the entire proceedings to any other court of appeals "for the convenience of the parties in the interest of justice." Although transfer is discretionary with the court, this discretion is in large part guided by a set of criteria established by case law.

In reviewing orders of the NLRB, the courts of appeals have placed special emphasis on the choice of forum of the truly aggrieved party. Where two parties are genuinely aggrieved by the Board's order, but one manages to race to the courthouse ahead of the other, the rationale for preferring a party's choice of forum found in many § 2112(a) decisions disappears. Nonetheless, the forum preference persists. Employer, union and Board alike perceive that the court of first filing will hear the case absent a good reason to transfer it elsewhere. This accurate perception has encouraged if not demanded a fierce race to the courthouse. The higher the stakes are thought to be by petitioners, the more sophisticated (and certainly the more expensive) the race.

This court has respected and will continue to respect an aggrieved party's choice to file a petition for review in this circuit. Congress, in enacting § 10(f) of the Act, 29 U.S.C. § 160(f) (1976),[3] "place[d] this court on a par with the courts of appeals for the circuits in which the alleged unfair labor practices occurred." *International Union of Electrical, Radio & Machine Workers v. NLRB,* 610 F.2d 956, 962 (D.C.Cir.1979). This is in contrast to § 10(e) of the Act, 29 U.S.C. § 160(e) (1976), which authorizes the Board to seek enforcement of its order only in the circuit in which the unfair labor practice allegedly took place, or in which the respondent resides or transacts business. "By not eliminating, but expressly acknowledging, the District of Columbia as an alternative forum, the apparent aim of Congress is to ease the situation of a losing party desiring review. It affords the losing party a choice denied the Board when it proceeds under section 10(e)." *Ball v. NLRB,* 299 F.2d 683, 688 (4th Cir. 1962), *quoted in*

---

**2.** *Natural Resources Defense Council, Inc. v. EPA,* 673 F.2d 392, at 397–98 (D.C.Cir. 1980); *Industrial Union Department, AFL–CIO v. Bingham,* 570 F.2d 965, 970 & n.9 (D.C.Cir. 1977).

**3.** That section provides, in pertinent part, that
Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of

such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside.

*International Union of Electrical, Radio & Machine Workers,* 610 F.2d at 962 n.49. This respect due an aggrieved party who chooses to file in this court emanates from the congressional desire to assist *the losing party.* No such respect is due a person who has substantially prevailed before the Board.

■ *It must be emphasized that § 2112(a) is a mechanical device to determine which court will determine venue, not which court will ultimately hear the case.* Transfer is entirely discretionary with the court of first filing.[4] The courts have developed a set of factors to consider when presented with a motion to transfer brought under § 2112(a). In fleshing out the phrase "for the convenience of the parties in the interest of justice," the courts have considered the location of counsel, location of the parties, whether the impact of the litigation is local to one region, whether one circuit is more familiar with the same parties and issues or related issues than other courts, the caseloads of the respective courts, and whether there is but one truly aggrieved party.[5]

In *Public Service Commission v. FPC,* 472 F.2d 1270, 1272 (D.C.Cir.1972), this court observed that any preference for the forum in which the first petition was filed is subject to certain exceptions, including one "[f]or a case where the first petition to review is filed by a party who is not substantially aggrieved, in effect undercutting the assumption of a good faith petition to review."[6] We are presented in these cases

with examples of this exception. In *UAW v. NLRB,* 373 F.2d 671, 673 (D.C.Cir.1967), the case relied on by the court in *Public Service Commission,* this court stated that "§ 2112(a) requires respect for the forum where the Union filed its petition for review, since that was the first petition for review filed, and we cannot say either that the Union's claim is frivolous or that it is not genuinely aggrieved." But the court noted that

> [w]e do not think a party's selection of forum is necessarily controlling if it has received substantially all the relief contemplated, and any shortfall is inconsequential even though it does not eliminate the technical status of "aggrievement."

> [T]he possibility of a transfer on this ground is not to be taken as permitting trial by affidavit on the issue of motivation. It is reserved for the special case where the "inconsequential" character of the deficiency in findings or relief is established by the petitioner's own stipulation . . . or other pleading or representation.

373 F.2d at 674 (citation omitted).

■ As this court emphasized in *UAW* and reiterated in *International Union of Electrical, Radio & Machine Workers v. NLRB,* 610 F.2d 956, 962 (D.C.Cir.1979), *Public Service Commission,* 472 F.2d at 1272 & n.2, *Municipal Distributors Group v. FPC,* 459 F.2d 1367 (D.C.Cir.1972), and *Truck Drivers & Helpers Local No. 728 v. NLRB,* 386 F.2d 643, 644 (D.C.Cir.1967), only in the

---

4. Even without § 2112(a), the courts of appeals have the inherent power to transfer a case to another court of appeals. *Abourezk v. FPC,* 513 F.2d 504, 505 n.1 (D.C.Cir.1976) Bazelon and Wright, JJ., concurring); *Eastern Air Lines, Inc., v. CAB,* 354 F.2d 507, 510 (D.C.Cir. 1965). The criteria used in evaluating the propriety of the transfer are largely the same.

5. *United Steelworkers of America v. Marshall,* 592 F.2d 693, 696–698 (3d Cir. 1979); *Industrial Union Dept., AFL–CIO v. Bingham,* 570 F.2d 965, 971–973 (D.C.Cir.1977); *American Public Gas Ass'n v. FPC,* 555 F.2d 852, 855 n.5 (D.C. Cir.1976); *McGarity, Forum Shopping For Appellate Review of Administrative Action,* Report to the Administrative Conference, 61–81 (August 15, 1980).

6. The court's discussion of § 2112(a) suggests that, in the absence of those exceptions, the statute does create a presumption in favor of review in the court of first filing. None of the most recent opinions of this court which discuss § 2112(a) refers to any sort of presumption or forum preference, although the language in *Public Service Commission* has not been disapproved. *See International Union of Electrical, Radio & Machine Workers v. NLRB,* 610 F.2d 956, 961 (D.C.Cir.1979); *Industrial Union Dept., AFL–CIO v. Bingham,* 570 F.2d 965 (D.C.Cir.1977); *American Public Gas Ass'n v. FPC,* 555 F.2d 852 (D.C.Cir.1976); *Abourezk v. FPC,* 513 F.2d 504, 505 n.1 (D.C.Cir.1975) (Bazelon and Wright, JJ., concurring).

"special case" will transfer be warranted for this reason.

■ The courts are loathe to examine the merits of the case in order to decide this question. Certainly it is inappropriate to compare the relative aggrievement of the union and the company, where both are substantial.[7] It is normally assumed that the union filed its petition because it was aggrieved, not for the purpose of forum shopping. If it appears from the insubstantiality of the pleadings that the union filed first largely to secure a forum believed favorable to it, then such first filing will be disregarded. With these relatively clear guidelines appropriate for application, we turn to the cases at hand.

7. *See also United Steelworkers of America v. Marshall,* 592 F.2d 693, 696 (3d Cir. 1979). It appears that not all circuits have been as reluctant to weigh the comparative aggrievement of the parties. *ITT World Communications, Inc. v. FCC,* 621 F.2d 1201, 1208 (2d Cir. 1980) ("It is a well recognized principle that the interests of justice favor placing the adjudication in the forum chosen by the party that is significantly aggrieved by the agency decision."); *J. L. Simmons Co. v. NLRB,* 425 F.2d 52, 55 (7th Cir. 1970) ("The aggrievement, if any, suffered by the company as a result of the Board's order, which granted substantially all the relief requested, is insignificant when compared with that claimed by the union."); *Chatham Mfg. Co. v. NLRB,* 404 F.2d 1116, 1118 (4th Cir. 1968).

Even if the party first filing a "petition for review" has some legitimate complaint about the board's order, but is substantially the prevailing party, the court has the discretionary right under 28 U.S.C.A. § 2112(a) to transfer the proceedings to any other court of appeals when such a transfer would be for the convenience of the parties and the interest of justice.

8. Section 10(f) of the Act, 29 U.S.C. § 160(f) (1976), allows "any person aggrieved by a final order of the Board" to petition a court of appeals for review of that order. (All the courts of appeals have jurisdiction to review and enforce orders of the NLRB. Section 10(f), which designates the proper fora for review of a Board's order, is concerned only with venue. *NLRB v. Wilder Mfg. Co.,* 454 F.2d 995, 998 n.12 (D.C.Cir.1972), and authorities cited therein.) In *Retail Clerk's Union 1059 v. NLRB,* 348 F.2d 369, 370 (D.C.Cir.1965), this court held that one has standing to appeal an order of the Board within the meaning of § 10(f) if there is

## III. ARE THE UNIONS GENUINELY AGGRIEVED?

### A. *No. 80–2085*

■ This case is a particularly egregious example of filing solely to forum-shop. It taxes the imagination to find a basis for Local 1309's standing to file a petition for review of the Board's order.[8] Both Bayshore and the Board argue that Local 1309 has received all the relief it requested from the decision of the Board. Local 1309 does not really contest this. Instead, it claims that the failure of the Board to pass specifically on *Local 1309's* motion for summary judgment has "aggrieved" Local 1309 within § 10(f). This argument is so gossamer that it affords no cover for the union's

demonstrated an "adverse effect in fact" on the petitioner. The refusal to rule specifically on Local 1309's motion for summary judgment arguably does not even amount to technical aggrievement as it is not clear how Local 1309 is adversely affected by such refusal.

If Local 1309 lacks standing to petition this court for review of the Board's order, it would be proper to dismiss the petition. We prefer not to dismiss this petition, however, but to follow precedent and to transfer the Union's petition to the Ninth Circuit where that court may determine, as relevant, the issue of Local 1309's standing.

In *Insurance Workers International Union v. NLRB,* 360 F.2d 823, 827 (D.C.Cir.1966), this court held that because the Union was afforded all the relief it had sought, it was not "such a person aggrieved as to be entitled to seek review of the Board's order in this court. . . ." The court did not grant the motion to dismiss, however, but transferred the proceedings to the Seventh Circuit.

Our denial will be without prejudice to renewal by the [movant] in the transferee court. We should not and we do not undertake to bind the Seventh Circuit on the Union's claim that it is a person aggrieved. That court will be free to rule on the Union's standing. We say only that at this stage of the consolidated proceedings, it has not been made to appear to this court that the Union was entitled to seek here a review of the Board's order.

360 F.2d at 827–828. *Accord: J. L. Simmons Co. v. NLRB,* 425 F.2d 52, 54 (7th Cir. 1970) (Court declined to dismiss on standing grounds, though it had serious doubts whether the company was in fact aggrieved, and transferred the petitions instead).

attempt to place venue in this court for ulterior purposes.

Local 1309 reads Sections 102.24, 102.25, and 102.50 of the NLRB's Rules and Regulations to require the Board to "issue a written decision with respect to any motion submitted to it."[9] In a burst of hyperbole Local 1309 concludes that "[t]he entire concept of due process as it is expressed in our legal system is based upon the fact that a party making a motion has a right to have a ruling on that motion." If indeed the Board is required to rule on this motion, either by its own regulations or the "entire concept" of due process, then this appears to be the classic case of harmless error.[10]

Local 1309 has failed to point out to this court any additional or different relief the Board or this court can award it, apart from this abstract obligation of the Board to answer all motions in writing.[11] Under these circumstances, the test set out in *UAW* has been satisfied. Local 1309's choice of forum is thus entitled to no weight.

A canvass of the factors which courts employ in discretionary transfer cases brought under § 2112(a) leads to the ineluctable conclusion that the Ninth Circuit is the appropriate forum to hear the case.

Bayshore is the truly aggrieved party, and has properly filed there a petition for review of the Board's order. Both the company and the union local are located in San Diego, California, where the alleged unfair labor practices took place.[12] The law firms engaged by the parties to represent them are located in San Diego. Convenience of the parties, and more importantly, convenience of counsel are relevant factors in deciding whether to transfer.[13] The Board itself suggested that this case be transferred to the Ninth Circuit: It is done.

### B. *Nos. 80–1746, 80–2152, 80–2278*

The petition filed by Local 2 in No. 80–1746 is marginally different from the above case because the petitioning party received all of the customary relief it requested from the Board, but did not receive the special or extraordinary relief it sought in addition. In the process of directing the employer to cancel working conditions which were unilaterally promulgated, restore the *status quo ante*, make whole the employees for loss of time and expenses incurred as a result of the working conditions, rescind any disciplinary action, bargain with Local 2 upon request, and post the appropriate notice, the Board did not specifically address and therefore denied

---

**9.** Section 102.25, triggered by §§ 102.24 and 102.50, provides that a trial examiner shall rule on all prehearing motions and all such rulings and orders shall be issued in writing. "Whenever the trial examiner has reserved his ruling on any motion, and the proceeding is thereafter transferred to the Board ..., the Board shall rule on such motion."

**10.** It is not all that clear that the Board erred here. The Board could be said to have "ruled" on petitioner's summary judgment motion by granting the twin motion of the General Counsel. However, the Board expressly stated that it declined to rule on Local 1309's motion, as it was unnecessary to do so. 251 N.L.R.B. No. 136, slip op. at 6 n.5. The Board hinted that Local 1309 might not have standing to file its motion in the first place. *Id.* Grounding its decision on the General Counsel's summary judgment motion obviated a discussion and decision on the standing issue.

It certainly cannot be argued, in view of the Board's footnote, that the Board "ignored" petitioner's motion. To argue as Local 1309 does that the failure to "rule" on its motion is the

significant fact, disregarding the full consideration the Board gave to each argument contained in the motion, is to exalt form over substance.

**11.** In a very similar factual situation, the Seventh Circuit stated that "a serious question is presented whether the Board's refusal to rule on the company's contention on this issue made the company a 'person aggrieved' within the meaning of section 10(f)". *J. L. Simmons Co. v. NLRB*, 425 F.2d 52, 54 (7th Cir. 1970). The court did not so hold however, preferring to rest its decision on the genuine aggrievement doctrine. *See* note 8 *supra.*

**12.** *See* page 1209 *infra.*

**13.** *See United Steelworkers of America v. Marshall*, 592 F.2d 693, 697 (3d Cir. 1979) ("The only significant convenience factor which affects petitioners seeking review of rulemaking on an agency record is the convenience of counsel who will brief and argue the petitions."); *McGarity, supra* note 5, at 62–64.

Local 2's request for attorney's fees. Local 2 argues this was error, rendering it substantially aggrieved.

Each and every aspect of the Board's order is directed to the wholesalers. It is only the denial of attorney's fees which renders Local 2 "a person aggrieved" and permits it to file a petition for review.[14] Because this aggrievement relates to no part of the underlying dispute between employer and union other than fees and costs, it is insubstantial.

■ This court has held that the Board has the power, pursuant to § 10(c) of the Act, 29 U.S.C. § 160(c) (1976)[15], to award to the charging party counsel fees and litigation costs as additional affirmative relief. *Food Store Employees Union, Local 347 v. NLRB*, 476 F.2d 546, 550–551 (D.C.Cir. 1973), *rev'd in part on other grounds*, 417 U.S. 1, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974). But the Board has determined that such an award is appropriate only upon a showing of "clearly aggravated and pervasive misconduct" or when the defenses are "palpably without merit." *International Union of Electrical, Radio and Machine Workers v. NLRB*, 426 F.2d 1243, 1250 (D.C.Cir.), *cert. denied*, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970).[16] Although the union persistently prays for attorney's fees, such fees and litigation expenses are generally not considered by the Board as part and parcel of its usual compensatory remedy. Only in rare cases are attorney's fees granted by the Board, and rarer still the case where a court of appeals will reverse the Board's denial of attorney's fees.[17] The Board's choice of remedies in enforcing the

Act is entitled to great deference from the courts. As this court recently stated, "the imposition of remedies is a matter of special administrative competence, subject to very limited judicial review." *United Steelworkers of America v. NLRB*, 646 F.2d 616, at 629 (D.C.Cir.1981). With these considerations in mind, we believe that a petition for review, filed solely to fight an uphill battle with respect to no part of the underlying dispute between employer and union other than litigation expenses, may be considered so "inherently implausible or insubstantial" that it should not be determinative of the forum for review.[18]

We do not intend to suggest that a request for extraordinary relief denied by the Board will never render the charging party genuinely aggrieved. But it is for the Board in the first instance to determine if the facts justify such an award. Our review of that decision is "very limited."

■ Prior opinions of this court wisely caution the court of first filing not to delve into the merits of the underlying dispute lest there be an appeal within an appeal. *UAW*, 373 F.2d at 364; *International Union of Electrical, Radio & Machine Workers*, 610 F.2d at 962. We observe that stricture, but here it is manifest from the parties' moving papers that Local 2's protest of a routine denial of counsel fees and litigation expenses was at best ancillary to the dispute. In such circumstances, the court of first filing can subordinate the forum preferences of a party who has substantially prevailed before the Board and seeks review only of the Board's refusal to grant it

---

**14.** See note 8 *supra*.

**15.** Section 10(c) provides in relevant part that the Board "shall take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter."

**16.** *District 65, Distributive Workers of America v. NLRB*, 593 F.2d 1155, 1167 (D.C.Cir.1978).

**17.** Local 2 has not cited us to any decision of this court *ordering* the Board to award attorney's fees and this appears to be foreclosed by the Supreme Court's opinion in *NLRB v. Food Store Employees Local 347*, 417 U.S. 1, 10, 94

S.Ct. 2074, 2080, 40 L.Ed.2d 612 (1974), where the Court stated:

[W]hen a reviewing court concludes that an agency invested with broad discretion to fashion remedies has apparently abused that discretion by omitting a remedy justified in the court's view by the factual circumstances, remand to the agency for reconsideration, and not enlargement of the agency order, is ordinarily the reviewing court's proper course.

**18.** *See American Public Gas Ass'n v. FPC*, 555 F.2d 852, 858 n.5 (D.C.Cir.1976).

additional ancillary relief. The court may then engage in an appropriate exercise of discretion under § 2112(a) to retain the case or to transfer the case to an appropriate circuit "for the convenience of the parties in the interest of justice." [19]

The Second Circuit is the convenient forum in which this case should be heard. Local 2 and the Companies are all located in New York, and both sides have enlisted counsel from New York City on their behalf. The unfair labor practice allegedly occurred in New York.

█ Local 2 argues without citation that case law forbids the court of first filing from considering the residence of the parties and the situs of the alleged unfair labor practice. These arguments are incorrect. Residence of the parties, although not a major factor, nevertheless has been considered by this court. *E. g., Industrial Union Dept., AFL–CIO v. Bingham*, 570 F.2d 965, 971 (D.C.Cir.1977). Indeed, the plain wording of § 2112(a) belies any notion of its irrelevance. It is not true that where the unfair labor practice occurred is immaterial. This court has noted only that the locus of the unfair labor practice should not be dispositive of a motion to transfer. *International Union of Electrical, Radio & Machine Workers*, 610 F.2d at 962.

## IV. CONCLUSION

It may be naive to hope that the bar would view all courts of appeals, and their judges, as fungible. We need not pause to determine whether the failure so to view the federal appellate process reflects on the bar or on the bench. In either event, courts need not and should not cater to the disingenuous reasons lawyers and parties give in seeking out one tribunal over another.

We believe that to be "genuinely aggrieved" by a decision of the Board, such aggrievement must result from a significant part of the Board's action. A party, whether it be employer or union, should not search out a remedy to request from the Board in an effort to choose a forum of review. Because it cannot be said that either union here was genuinely aggrieved by the Board's decision granting substantially all the relief it requested, this court has ordered No. 80–2085 transferred to the Ninth Circuit, and Nos. 80–1746, 80–2152 and 80–2278 transferred to the Second Circuit.

---

19. Of course, the court of first filing may determine in its exercise of discretion that the convenience of the parties and the interest of justice demonstrate that the court should decline to transfer and instead entertain the case. But the court will reach this conclusion upon a consideration of the relevant factors and, more importantly, liberated from the forum preference.