**Abraham K. ABRAHAM**

v.

**James W. PEKARSKI, et al.**

No. 79–3912.

United States District Court, E. D. Pennsylvania, Civil Division.

April 21, 1982.

Marshall E. Kresman, Bensalem, Pa., for plaintiff.

Clyde W. Waite, Bristol, Pa., for defendants.

## OPINION AND ORDER

EDWARD R. BECKER, Circuit Judge.*

### I. PRELIMINARY STATEMENT

This civil rights action was brought by the former Director of Roads and Public Property of Bristol Township, Bucks County, Pennsylvania, against the Township and the members of its Board of Commissioners, seeking to redress his discharge which had been prompted by plaintiff's refusal to deny the services of his department to wards served by Commissioners unallied with the Board's dominant political faction. This opinion addresses defendants' motion for summary judgment which has raised two important questions. The first question is whether the doctrines of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 247 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), protect the First Amendment associational rights of a nonpartisan and politically unaffiliated employee whose employment is terminated for disobeying orders that he deems "political" and contrary to the public interest. As will be seen, we answer that question in the negative. The second question is whether a governing Township ordinance providing that "no person shall be discharged without just cause," when read in conjunction with sections of the Pennsylvania Local Agency Law, providing that no action "affecting . . . property rights" shall be valid unless the affected party has notice and a hearing, gives plaintiff a property right in his public employment protected by the Fourteenth Amendment's due process clause. As will be seen, at this stage of the litigation, we answer that question affirmatively.

Rule 56 of the Federal Rules of Civil Procedure permits a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The inferences to be drawn from the underlying facts advanced by the movant must be viewed in the light most favorable to the nonmovant, *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Defendants, however, have not accompanied their motion with any affidavits or other materials which may be considered in adjudging a summary judgment motion.[1] Therefore, for purposes of ruling on the motion, we will treat all of plaintiff's well-pleaded allegations as true. *See Sheridan v. Garrison*, 415 F.2d 699, 709 (5th Cir. 1969), *cert. den.*, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970); 6 *Moore's Federal Practice* ¶ 56.11[2], at 56–210 (1981).[2] After reciting the facts upon which we base our decision, we will outline the issues raised by defendants' motion. We will then explain our conclusion that defendants' motion must be granted insofar as it relates to plaintiff's *Elrod/Branti* claim and denied insofar as it relates to plaintiff's due process claim.

---

* Of the Third Circuit Court of Appeals, sitting by designation. At the time the motion adjudged herein was filed, Judge Becker sat as a Judge of the United States District Court of the Eastern District of Pennsylvania.

1. A court may not consider on a summary judgment motion documents that have not been identified by affidavit or otherwise made admissible in evidence. *See generally* 6 Moore's Federal Practice ¶ 56.11[1.–8] (1981). Defendants' only submission in support of their motion is an unauthenticated copy of the minutes of a July 25, 1979, Special Meeting of the Board of Commissioners of Bristol Township. We have read these minutes and have concluded that the result herein would not have been different had the minutes been properly authenticated. *See* n.16 *infra*.

   Despite the lack of any materials accompanying the motion, pursuant to F.R.Civ.P. 56(c), we have considered the depositions on file in examining the propriety of summary judgment.

2. Furthermore, at oral argument, defendants' counsel conceded that plaintiff's statement of the facts should be accepted for purposes of ruling on the summary judgment motion.

## II. THE FACTUAL BACKGROUND AND THE CONTENTIONS OF THE PARTIES

Plaintiff, who is of Southern Asian extraction, was employed by Bristol Township, Bucks County, Pennsylvania, as Superintendent of Roads and Public Property from March 19, 1976, until January, 1977, and thereafter as Director of Roads and Public Property until July 25, 1979, when his employment was terminated. Although he was vested with some discretion in the execution of his duties, such as determining which potholes should be filled, plaintiff's position did not empower him to make policy decisions. Rather, he was required to execute directives and implement Township policies as determined by the Bristol Township Board of Commissioners. During his tenure, plaintiff performed his responsibilities with efficiency and diligence.[3]

On July 25, 1979, plaintiff's position as Director of Roads and Public Property was eliminated by the Board and his duties were assumed by a department assistant at an increased salary.[4] Plaintiff alleges that his position was terminated because he refused to cooperate with Commissioners Pekarski and Gesualdi and their political faction and accommodate their wishes by denying services to those wards in Bristol Township represented by Commissioners with whom

---

**3.** Defendant Pekarski complained about Abraham's performance, but he admitted that the quality of Abraham's performance was unrelated to the loss of his job. Deposition of James W. Pekarski, August 14, 1980, at 13–15, 27.

**4.** This transaction is revealed in the following excerpts from the transcript of the Commissioners' meeting:

CATANIA—At this time I'm making a motion to eliminate the highway director's job and to move the assistant to take over the control of that department.

PEKARSKI—Motion by Commissioner Catania to eliminate the director's job of the Highway to be taken over by Bill Surrick made by Jerry Catania. Is there a second?

GESUALDI—Second.

LEWIS—On the question?

PEKARSKI—On the question, Commissioner Lewis.

LEWIS—On the question, I think that a motion of this nature is highly improper at this particular moment.

GESUALDI—We don't care what you think. Let's vote.

LEWIS—I think that a statement of that nature smacks of arrogance of power, and, I think that you'll have to answer to quite a few people if you intend to ride a motion through like that.

PEKARSKI—Do you have a question?

COTUGNO—One question, Mr. Chairman. I think really this oughta—of this importance we oughta discuss it and it be brought up at the next regular public meeting.

PEKARSKI—Any other questions?

MASCIA—Commissioner Cotugno, did I spend a week down at Public Highway in February? Did I come back and get the whole Board the report? Alright.

LEWIS—Do you—Are there any other people you also have in mind for the vacancy at this time?

PEKARSKI—Not filling the vacancy.

MASCIA—Bob, when I spent 40 and 60 hours—budgetary reasons.

PEKARSKI—That was just part of this motion that they were moving Bill Surrick in there.

LEWIS—I make a motion that we table it.

PEKARSKI—Poll the Board. [Motion passes, five votes to three votes.]

Transcript, Special Meeting Board of Commissioners of Township, July 25, 1979, at 10–11.

LEWIS—I'd like to just ask one question regarding the elimination of the job in the highway department. Did we eliminate the job and then promote somebody into the job? What—

MASCIA—We said—eliminated the job.

PEKARSKI—... Bill Surrick will take over as the head of the department.

LEWIS—In other words, you now have a new head of the department. You've eliminated the job or you created a new head of the department?

PEKARSKI—That's what was said. Commissioner Lewis, if you'd keep your ears open, you'd hear.

LEWIS—I heard it. And, the next question I have because I've kept my ears open, is what salary do you intend to pay—

PEKARSKI—Same salary, because we raised it before to do the job and he's the guy who's been doing the job down there.

GESUALDI—Commissioner Lewis, you belong in the Vets Stadium in the grandstand. *Id.* 13–14.

LEWIS—Did we eliminate the job at the highway department or lay him off?

PEKARSKI—We eliminated the job at the Highway Department.

GESUALDI—Would you like to elaborate on that, Mr. Lewis?

LEWIS—Unintelligible.

*Id.* 24–25.

they were not allied.[5] Defendants, in their answer to the complaint, admitted that plaintiff was dismissed, but deny plaintiff's averment as to the cause for his dismissal. Plaintiff's duties as Director continue to be executed by his assistant, who serves as "Acting Superintendent" of the department.

Shortly thereafter, plaintiff filed this suit in which he asserts a number of claims and seeks damages and reinstatement. First, as we have previously suggested, plaintiff contends that the termination of his employment violated his First Amendment freedom of association by punishing him for his refusal to join the political faction of Commissioners Pekarski and Gesualdi. Second, he asserts that his dismissal was in violation of the procedures of Bristol Township and the Commonwealth of Pennsylvania, thereby constituting a violation of his procedural due process rights. Third, he claims that defendants acted in concert to deprive him of his constitutional rights in violation of 42 U.S.C. §§ 1985 and 1986. Fourth, he claims that defendants intentionally inflicted emotional distress upon him.

In their summary judgment motion defendants argue that plaintiff was not "dismissed," but rather that his position was "eliminated" by the Board of Commissioners; that these facts do not present a cognizable *Elrod/Branti* claim; that plaintiff possessed no property interest in his employment sufficient to invoke the due process clause (or that there was no "adjudication" to which due process hearing requirements could attach); and that plaintiff's §§ 1985 and 1986 claims are factually and legally untenable. We have held an extensive hearing and received several briefs in connection with the motion. We need not engage in any extensive discussion of the §§ 1985 and 1986 claims as plaintiff has simply adduced no evidence of the presence of any of the elements of § 1985(2) or (3), the only conceivable sections of the statute on which plaintiff's claim could rest, and summary judgment for defendants will be granted thereon.[6] We must however consider *Elrod/Branti* and the due process claims in some detail and we will do so in that order. As a predicate to that discussion, we will assume that there is a genuine issue of fact on the question whether plaintiff lost his position as the result of a neutral budgetary decision or as the result of retaliation for his refusal to accede to the wishes of the dominant faction on the Board.[7]

## III. THE ELROD/BRANTI FREEDOM OF ASSOCIATION CLAIM

Few Supreme Court decisions in recent years have generated as much litiga-

---

**5.** His allegation finds support in the deposition of defendant Chaser Cotugno, July 9, 1980, at 15.

**6.** Plaintiff has not specified under which specific provision of § 1985 his claim lies. His claim could conceivably fall only under § 1985(2) or under § 1985(3). Plaintiff's claim fails under these provisions because he has failed to produce any shred of evidence that there existed a class-based invidiously discriminatory animus behind defendants' alleged conspiratorial action. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (stating requirements of § 1985(3)); *Brawer v. Horowitz,* 535 F.2d 830, 839–40 (3d Cir. 1976) (stating requirements of § 1985(2)). Plaintiff attempts to show this animus exclusively through the deposition testimony of Commissioner Chaser Cotugno, that on one occasion while discussing plaintiff, Commissioner Gesualdi stated, "I will get him an elephant." Cotugno opined that by this remark Gesualdi was "downing the man's nationality." This evidence is simply insufficient to sustain the requirements of § 1985(2) and (3). Furthermore, plaintiff has produced no "significant probative evidence" in support of his conspiracy claim. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 513 F.Supp. 1100, 1139–43 (E.D.Pa.1981), *appeal pending,* No. 81–2331 (3d Cir.). Plaintiff's § 1986 claim fails because it is merely derivative of the § 1985 claim. *Rogin v. Bensalem Twp.,* 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied sub nom., Mark-Garner Assocs., Inc. v. Bensalem Twp.,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

We do not undertake upon our own motion to dispose of the pendent tort claim. We do note, however, that, in all likelihood, plaintiff's claim for intentional infliction of emotional *distress is frivolous. See, Cautilli v. GAF Corp.,* 531 F.Supp. 71 (E.D.Pa.1982).

**7.** *See* n.5, *supra,* and accompanying text and n.21, *infra.*

tion and controversy as have *Elrod* and *Branti*.[8] Moreover, because of the lack of a majority opinion in *Elrod*, a problem not cured by *Branti*, the sweep of *Elrod* and *Branti* has been subject to a good deal of critical analysis seeking to assess their reach.[9] We need not, however, continue the dialogue. For the purpose of analyzing plaintiff's claim we may with confidence posit that *Elrod* and *Branti* at least stand for the principle that the denial of a public benefit, such as public employment, "may not be used by the government for the purpose of creating an incentive enabling it to achieve what it may not command directly," *Elrod*, 427 U.S. at 361, 96 S.Ct. at 2683,[10] and that the *Elrod/Branti* doctrine

does not proscribe all patronage firings but only those that threaten to penalize a public employee's exercise of his First Amendment rights. If the government could have commanded a particular result directly, then making that result a condition of receipt of a public benefit will not violate the Constitution.[11]

▆▆▆▆ The *Elrod/Branti* doctrine is further limited to firings "solely" for political purposes.[12] Thus, Justice Brennan, writing for the plurality in *Elrod*, emphasized that "employees may always be discharged for good cause, such as insubordination or poor job performance, when those bases in fact exist." 427 U.S. at 367, 96 S.Ct. at 2686.[13] Against this background

8. In *Elrod*, the Court ruled that a state government employees' First Amendment rights were violated by his removal from his post for partisan political reasons if his employment did not involve confidential or policy-making duties. This ruling was further refined in *Branti* to effect that even a confidential policy-maker's First Amendment rights would be violated by a discharge for partisan political reasons unless his policy-making role included matters legitimately affected by partisan political considerations. The kernel of these rulings, as we explain in the text of this opinion, was that government may not make the exercise of First Amendment rights a condition to public employment.

9. The wisdom of *Elrod* and *Branti* has also been subjected to critical judicial comment. *See, e.g., Loughney v. Hickey*, 635 F.2d 1063, 1065–71 (3d Cir. 1980) (Aldisert, J., concurring); *Farkas v. Thornburgh*, 493 F.Supp. 1168, 1169–71 (E.D.Pa.) (Troutman, J.), *aff'd mem.*, 623 F.2d 209 (3d Cir. 1980), *aff'd mem. sub nom., Appeal of Farkas*, 642 F.2d 441 (3d Cir. 1981).

10. This proposition was the essence of the agreement between the majority and concurring opinions in *Elrod* which garnered the necessary votes to affirm the lower court judgment in the discharged employee's favor and was not affected by the subsequent refinement in *Branti*. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds...." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (*quoting Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).

Regarding reconciliation of the plurality and concurring opinions in *Elrod* see *Alfaro DeQuevedo v. DeJesus Schuck*, 556 F.2d 591, 592 (1st Cir. 1977); *Rosenthal v. Rizzo*, 555 F.2d 390, 396 (3d Cir.) (Aldisert, J., dissenting), *cert. den.*, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977); *Catterson v. Caso*, 472 F.Supp. 833, 836 (E.D.N.Y.1979).

11. *Accord DeLong v. United States*, 621 F.2d 618, 623 (4th Cir. 1980); *Rosenthal v. Rizzo*, 555 F.2d at 392; *Mazus v. Department of Transp.*, 489 F.Supp. 376, 389 (M.D.Pa.1979), *aff'd*, 629 F.2d 870 (3d Cir. 1980), *cert. den.*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).

12. The question in *Elrod* was "whether public employees who allege that they were discharged or threatened with discharge *solely* because of their partisan political affiliation or nonaffiliation have a constitutional claim." 427 U.S. at 350, 96 S.Ct. at 2678. (Emphasis supplied). *See also* 427 U.S. at 376, 96 S.Ct. at 2691 (Stewart, J., concurring). *Branti* presented the Court with the question whether the constitution protects "an assistant public defendant who is satisfactorily performing his job from discharge solely because of his political beliefs." 445 U.S. at 508, 100 S.Ct. at 1289. (Emphasis supplied). *See generally McMullan v. Thornburgh*, 508 F.Supp. 1044 (E.D.Pa.1981); *Farkas v. Thornburgh, supra.*

13. A discharged public employee who alleges that he was discharged solely for political purposes must produce the proof of causation required by *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (footnote omitted):

Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—

we shall now proceed to evaluate plaintiff's claim.

Plaintiff's case differs significantly from *Elrod* and *Branti* in that he does not claim to have been discharged from employment because he was not affiliated with the political party in power. Certainly protection from unconstitutional conditions to the receipt of government benefits is not reserved for political party members. But the absence of any allegation that plaintiff has been penalized because of his party affiliation or nonaffiliation makes identification of the afflicted First Amendment interest more difficult and remote.

Plaintiff contends that the termination of his employment by the Board of Commissioners amounted to a political firing prohibited by the *Elrod/Branti* doctrine because it was motivated by his refusal to execute the partisan instructions of individual Commissioners to deprive wards represented by unallied Commissioners of public services. Plaintiff maintains that in refusing to execute these politically motivated directives he was refusing to ally himself with the majority faction on the Board and maintains that the Board's actions amounted to an infringement of his First Amendment freedom of association.[14]

Beyond pointing out that plaintiff had the discretion to determine the order in which potholes would be filled[15] and that he made suggestions regarding his department's budget,[16] defendants do not claim that plaintiff had a policy-making role which included matters legitimately affected by partisan political considerations. Indeed, little persuasive force attends a contention that duties such as the filling of potholes and streetpaving require a certain political affiliation in order to be effectively performed. *See Loughney v. Hickey*, C.A. No. 78–302 (M.D.Pa. Jan. 29, 1981). We, therefore, must consider the applicability of the *Elrod/Branti* doctrine to the termination of a position of public employment to which partisan political considerations are irrelevant.[17]

Under *Elrod* we must determine whether the Board could have directly commanded a deprivation of services to certain wards without violating plaintiff's rights. We think it is clear that a decision by the Board to allocate street services to certain wards to the exclusion of others would not have violated plaintiff's freedom of association. Nor did a violation of plaintiff's First Amendment rights follow the attempt by Gesualdi and Pekarski to deprive disfavored wards of plaintiff's services. This case thus

---

or to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

In a scholarly opinion, *Farkas v. Thornburgh, supra*, Judge Troutman has interpreted the "solely for political purposes" prerequisite in light of *Mt. Healthy* as implying that "an independent justification coupled with a constitutionally flawed reason will not taint [a public official's] decision to terminate plaintiff's employment." 493 F.Supp. at 1174.

14. Plaintiff has not asserted any infringement of his freedom of belief and, at oral argument, plaintiff's counsel expressly declined the opportunity to advance such a theory.

15. Deposition of James W. Pekarski, *supra* note 3, at 9.

16. Deposition of Robert Lewis, Jr., *supra* note 3, at 50.

17. It may be, if the facts were fully developed, that we would conclude that plaintiff's position was properly eliminated in an economy move of some sort. But on a motion for summary judgment we are bound to draw all inferences from the evidence in favor of the party opposing the motion—in this case, the plaintiff. *Small v. Seldows Stationery*, 617 F.2d 992 (3d Cir. 1980); *Zenith Radio Corp.*, 513 F.Supp. at 1140. *Elrod* and *Branti* are not rendered irrelevant because instead of plaintiff's being "fired," his position may have been "eliminated." Plaintiff's contention that he lost his job because of his refusal to comply with the wishes of Pekarski and Gesualdi cannot be negatived by this argument. The protection afforded by *Elrod* and *Branti* includes "elimination" of a position in retaliation for an unpopular exercise of First Amendment rights. *See DeLong v. United States*, 621 F.2d 618, 622–23 n.4 (4th Cir. 1980) (collecting cases).

does not fall under the *Elrod* variant of the doctrine of unconstitutional conditions. Whether an intentionally imbalanced allocation of street services would have violated the rights of residents of disfavored wards is not the question before us.

Plaintiff urges us to characterize the directives he chose to disregard as "politically motivated" directives. Thus plaintiff submits that his refusal to follow "politically motivated" instructions was a refusal "to join" with the faction of defendants Pekarski and Gesualdi and a refusal to participate in a political act, and that the termination of his employment was retaliation for failing "to join" with the majority faction of the Board. The disturbing implications of this suggestion are patent. Few, if any, decisions made by elected officials are not somehow "political" in nature. Plaintiff's implied definition of "political", an exercise of will by a majority of members of an elected legislative body, extends to virtually every action taken by an elected legislative body. If plaintiff's position were to be adopted, federal courts might become involved in second-guessing state and local authorities and intruding into their daily affairs whenever an employee was discharged because he refused to execute a "political" decision with which he disagreed. This result would undermine divisions of authority and wreak havoc in state and local government administration.[18] Such a radical course of action finds support in neither law nor reason and we accordingly reject plaintiff's suggestion.

18. Judge Cahn has astutely observed that the "solely for political purposes" prerequisite to an *Elrod* claim may be grounded in concerns about federalism. *Connors v. Cook*, C.A. No. 80–1860, slip op. at 6 (E.D.Pa. November 10, 1980).

19. Plaintiff makes much of a local ordinance which prohibits the Board or individual Commissioners from giving orders to certain Township employees. We judicially notice Section 27 of the Bristol Township Managers Ordinance which provides:

> Except for the purposes of inquiry the Board of Commissioners, its committees and its members shall deal with the administrative service solely through the Township Manager and neither the Board of Commissioners nor

There is no evidence in the summary judgment record that the termination of plaintiff's employment was "solely for political purposes." Plaintiff's complaint states that he lost his job because he refused to obey certain directives. Although the directives which plaintiff disregarded may not have been delivered through the proper channels,[19] we are not moved to disregard what plaintiff admits to have been the Board's motivation for his dismissal: his refusal to follow instructions. An employer's decision to discharge an employee because the employer in fact believed the employee to have been insubordinate, regardless of whether that belief was correct, is not a discharge solely for political purposes. Plaintiff's discharge may have been unjustified, but not every wrongful discharge from public employment bears constitutional infirmities.

The short of it is that *Elrod* and *Branti* do not extend to Abraham's case. He has not been penalized for an exercise of his freedom of association. Nor has he been penalized for preferring the course of nonassociation. We have not yet reached a point in the development of *Elrod* and *Branti* where public employees may override their superiors because they have a different view of what public policy should be. Accordingly, summary judgment will be granted in defendants' favor on plaintiff's *Elrod/Branti* claim.

## IV. THE DUE PROCESS CLAIM

In evaluating plaintiff's due process claim we look primarily to whether

> any of its committees nor any of its managers shall give orders—publicly or privately—to any subordinate of the manager.

Even though the Pekarski and Gesualdi directives would appear to have violated this ordinance, the ordinance does not create in plaintiff a First Amendment right to receive orders only from the township manager. Indeed, the idea that a statute can create a First Amendment right is antithetical to the First Amendment goal of barring legislative involvement in matters of speech, belief and association. Violation of this ordinance does not infringe plaintiff's First Amendment rights any more than would repeal of this ordinance altogether.

he enjoyed a constitutionally-protected interest in his employment. Plaintiff may have possessed such an interest if he had had a "legitimate expectation" of continued employment under Pennsylvania law. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although our jurisdiction rests upon the federal question raised in plaintiff's complaint, in determining whether plaintiff enjoyed a property right, we act much like a court attempting to apply state law in a diversity case.[20]

The Pennsylvania Local Agency Law, Pa. Cons.Stat.Ann. tit. 2, §§ 501–508 (Purdon Supp. Pamphlet 1981), which governs proceedings of the Bristol Township Board of Commissioners, provides in relevant part:

> No adjudication of the local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.

*Id.* § 553. An "adjudication" is defined as follows:

> Any final order, decree, decision, determination, or ruling by an agency, *affecting personal or property rights*, privileges, immunities, duties, liabilities, or obligations of any or all parties to the proceeding in which the adjudication is made.

*Id.* § 101 (Emphasis supplied).

Defendants would have us end our inquiry at this point on the ground that the elimination of plaintiff's position was not an "adjudication" to which the Local Agency Law and due process clause applied, but was merely a decision by the Board to reduce the Township's budget by eliminating plaintiff's position. This distinction, however, is without any support in Pennsylvania law. The statute on its face applies to "any final ... decision ... affecting ... property rights," and the Commonwealth Court has held that the Local Agency Law will apply to a termination of a position "for economy reasons" if an employee had a property right in his continued employment. *Sergi v. School Dist., City of Pittsburgh*, 28 Pa.Commonwealth 576, 368 A.2d 1359, 1361 (1977). The relevant inquiry then is whether Abraham had a property right in his employment.[21]

Section 26(N) of the Bristol Township Managers Ordinance, which we judicially notice and which applied to plaintiff's employment with the Township, pro-

---

**20.** In determining what Pennsylvania courts would probably rule in a similar case, we look first to decisions by Pennsylvania's highest court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Becker v. Interstate Props.*, 569 F.2d 1203, 1205–1206 (3d Cir. 1977), *cert. den.*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978); *Quinones v. United States*, 492 F.2d 1269, 1273 (3d Cir. 1974). If there be no relevant decision by that court, then we must apply what we find to be the state law after giving "proper regard" to relevant rulings of other Pennsylvania courts. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177–78, 61 S.Ct. 176, 177–78, 85 L.Ed. 109 (1940). Intermediate appellate court decisions which are the only exposition of the apposite law of the state and which have been in force and undisturbed over a course of years should be followed unless there is convincing evidence that state law is otherwise. *Six Cos. v. Joint Highway District No. 13*, 311 U.S. 180, 188, 61 S.Ct. 186, 188, 85 L.Ed. 114 (1940); *Fidelity Union Trust Co., supra.* We must also be sensitive to doctrinal trends and the policies which informed prior adjudications by Pennsylvania courts. *Becker v. Interstate Props.*, 569 F.2d at 1206. Lastly, we may also look to decisions in other courts as a Pennsylvania court might in informing its own decision.

**21.** We have given great weight to the Commonwealth Court's interpretation of the Local Agency Law. *See* text accompanying notes 22 and 23, *infra*. Even if defendants were correct in their argument that an elimination of a position was not an "adjudication", their motion would still fail because plaintiff has raised a genuine issue of material fact on this point. Plaintiff has adduced evidence showing that the majority faction had a political motive in removing plaintiff. The action by the Board eliminated only one position which was immediately filled by an acting director who received a salary increase. The position is still being filled by an acting director. There is thus a genuine question whether this was truly an elimination of a position for neutral fiscal reasons or merely a discharge of plaintiff clothed as an elimination of a position.

vides that "no person shall be discharged without just cause." Plaintiff urges that this "just cause" provision gave him a property right in his employment protected by the Fourteenth Amendment's due process clause. Our answer to that proposition relies upon interpretations of the phrase "property rights" in the Pennsylvania Local Agency Law, for the test used by Pennsylvania courts to determine whether an employee had a property right in his employment for purposes of the Local Agency Law tracks the inquiry mandated by the Supreme Court as to whether an employee had a "legitimate expectation" of continued employment for purposes of the Fourteenth Amendment due process clause.[22]

Even though neither the Pennsylvania Supreme or Superior courts have directly ruled on whether employment protected by a "just cause" provision gives rise to a property right under the Local Agency Law,[23] the numerous interpretations of that Act by the Commonwealth Court provide very strong support for finding such a right and fail to indicate that such a property right would not be found to exist. Although neither the Pennsylvania Supreme Court nor Superior Court have written on the issue of what constitutes a property right under the Local Agency Law, we believe that the opinions of the Commonwealth Court provide a reliable guide to the state of the law in Pennsylvania. Although it is only an intermediate appellate court or, depending upon the parties and nature of the suit, a court of original jurisdiction, *see* Pa.Cons.Stat.Ann. tit. 42, §§ 761 & 762

**22.** Defendants have urged us to abstain from deciding this question under the doctrine of *Railroad Comm. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). We conclude that application of the *Pullman* doctrine is inappropriate here because we are not confronted with an opaque question of state law, the resolution of which might avoid a substantial constitutional adjudication. Cf. *D'Iorio v. County of Delaware*, 592 F.2d 681 (3d Cir. 1978) (abstention required in public employee dismissal case when state law unclear, alternative state law interpretation could obviate a constitutional ruling, and erroneous federal ruling on state law would of necessity affect sensitive state policy). *Pullman* abstention is most appropriate, although not required, in instances where the state law has never been interpreted. *E.g., Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). Abstention is less appropriate, and perhaps even irresponsible, where, as here, the state statute has been extensively scrutinized and interpreted by state courts and application of the statute to the case at bar does not involve a wild gamble at predicting state law, but can be made through a process of deduction from directly analogous case law.

Abstention should not be engaged in lightly for it is but a narrow exception to the duty of the federal courts to adjudicate controversies over which they have jurisdiction and is justified only in "special circumstances." *Baggett v. Bullett*, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964) (*citing Propper v. Clark*, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949)). *See also Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Blake v. Kline*, 612 F.2d 718, 727 (3d Cir. 1979), cert. den., 447 U.S. 921, 100 S.Ct. 3011, 65

L.Ed.2d 1112 (1980). Chief Judge Latchum has gone so far as to hold that the party invoking the *Pullman* doctrine must show not only that resolution of an unsettled state law question will avoid a constitutional question, but must also show *the likelihood* of an alternative construction of state law which would make a constitutional adjudication unnecessary. *United States v. Cargill, Inc.*, 508 F.Supp. 734, 738 (D.Del.1981). Defendants have baldly invoked the *Pullman* doctrine without setting forth *any* special circumstances justifying the renunciation of our jurisdiction. Nor have they advanced any likely interpretation of state law which will avoid a federal constitutional question. We therefore will not decline to exercise our obvious jurisdiction over this case.

**23.** We note that the Bucks County Court of Common Pleas, in *Worrell v. Falls Twp.*, 33 Bucks 216 (1979), found that a local ordinance similar to the one involved here created a property right in employment. *Worrell* is not directly relevant here because it seems, in light of *Worrell's* reliance on *Penuel v. Uwchlan Twp.*, 40 Pa.Commonwealth 512, 397 A.2d 865 (1979), and *D'Iorio v. County of Delaware*, 447 F.Supp. 229 (E.D.Pa.) vacated, 592 F.2d 693 (3d Cir. 1979), that the employee's property right in his employment was not derived from the "just cause" provision in the local ordinance. Moreover, we do not believe that the reasoning of *Worrell* would be followed by the Pennsylvania Supreme Court.

We also note that, in *Riddick v. Cuyler*, 523 F.Supp. 258 (E.D.Pa.1981), Judge Newcomer found that a "just cause" provision in the Pennsylvania Civil Service Act created a property right in employment.

(Purdon 1981), the Commonwealth Court's expertise in matters involving the regulation of the affairs of political subdivisions commands much deference because it has nearly exclusive jurisdiction over appeals involving such matters from Courts of Common Pleas. *See* Pa.Cons.Stat.Ann. tit. 42, § 762(a)(4) (Purdon 1981).[24] We turn now to examine the meaning of "property right" under the Local Agency Law as interpreted by the Commonwealth Court.

■ The general test for a property right under the Local Agency Law is whether the employee had "an enforceable expectation of continued employment which has been guaranteed either by contract or statute." *Sergi v. Pittsburgh School District*, 368 A.2d at 1861. *See also Necci v. School Dist. of City of Erie*, 53 Pa.Commonwealth 259, 416 A.2d 1171 (1980); *Fair v. Delaney*, 35 Pa.Commonwealth 103, 385 A.2d 601 (1978). The requisite "enforceable expectation" will never occur in an employment relationship permitting discharge of the employee at the will and pleasure of the employer. *See, e.g., Hoffman v. Montour County*, 50 Pa.Commonwealth 101, 411 A.2d 1319 (1980), *Amesbury v. Luzerne County Inst. Dist.*, 27 Pa.Commonwealth 418, 366 A.2d 631 (1976). A property right will exist, however, whenever an employee has a right not to be discharged but for a particular reason. In other words, as long as an employee is not an "at will" employee, he will have a property right in his employment which can be terminated only in accordance with the Local Agency Law.

This conclusion is amply demonstrated by *Kretzler v. Ohio Township*, 14 Pa.Commonwealth 236, 322 A.2d 157 (1974). In that case, a policeman claimed that the Local Agency Law had been violated when he had been reduced in rank without a hearing. A state statute provided that no regular full-time officer could be reduced in rank except for certain enumerated reasons. The court never even mentioned the enumerated reasons in its opinion.[25] It was sufficient for the court that the officer was protected from discharge for any or for no reason at all. "As such, this statutorily conferred right is a property or personal right within the meaning of adjudication as defined by the [Local Agency Law]." *Kretzler*, 322 A.2d at 160. This approach to identifying a property right in public employment has been applied in other contexts without exception. *See e.g., Berger v. School Dist.*, 29 Pa.Commonwealth 313, 370 A.2d 1244 (1977) (school employee had property right in employment due to statute which, "by enumerating four reasons for the suspension of professional employees, in effect grants employees the right to be suspended for those reasons only"); *Fatscher v. Board of School Directors*, 28 Pa.Commonwealth 170, 367 A.2d 1130 (1977) (same). *Cf. Ambron v. Philadelphia Civil Serv. Comm.*, 54 Pa.Commonwealth 488, 422 A.2d 225 (1980) (statute created immunity to arbitrary transfer).

We find a great deal of similarity between Abraham's case and two other cases in which a public employee was found to have possessed a property right in his employment. In *DiCello v. Board of Directors of Riverside School Dist.*, 33 Pa.Commonwealth 39, 380 A.2d 944 (1977), the court held that an untenured temporary employee had a property right in her employment because she could not be dismissed but for "unsatisfactory performance." *Zimmerman v. Johnstown*, 27 Pa.Commonwealth 42, 365 A.2d 696 (1976), held that an employee who could not be suspended but for "misconduct" or "violation of any law of this Commonwealth, any ordinance of the city, or regulation of the [local] department" had a property right in his employment.

---

**24.** Indeed, in recognition of the Commonwealth Court's special role in resolving disputes concerning local agency affairs, the Superior Court has declined to exercise its shared jurisdiction over some of those cases and has instead transferred them to the Commonwealth Court's docket. *See, e.g., Valley Forge Indus. v. Armand Constr. Inc.*, 248 Pa.Super. 53, 374 A.2d 1312, 1316 (1977).

**25.** The statutory reasons were (1) physical or mental disability; (2) neglect or violation of duty; (3) commission of a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; and (5) intoxication while on duty. Pa.Stat.Ann.tit. 53, § 812 (Purdon 1974).

As in *DiCello* and *Zimmerman*, the statute involved in Abraham's case does not set forth particularized, enumerated reasons permitting discharge; it merely sets forth a broad, flexible standard—"just cause—against which the reasons for discharge were to be judged. The permissible ground for discharge is sufficiently specific, however, to distinguish Abraham from an "at will" employee and give him an enforceable expectation in continued employment. The "just cause" provision in Abraham's case is thus analogous to the standards for dismissal in *DiCello* ("unsatisfactory performance") and *Zimmerman* ("misconduct") in these material respects.

The Local Agency Law, in one form or another, has been part of the law in Pennsylvania for approximately fourteen years. The Law has been the subject of much litigation resulting in extensive judicial scrutiny and interpretation. Significantly, no decision by a Pennsylvania appellate court suggests that a "just cause" provision is inadequate to establish a property right. The only cases in which no expectation of continued employment was found involved at will employees. Clearly, Abraham was not an "at will" employee. In light of the foregoing discussion, we are reasonably confident that Pennsylvania courts would find that Abraham had an enforceable expectation of continued employment, i.e., a property right, in his job and would have been entitled to a pretermination hearing under the Local Agency Law.

We have also examined Pennsylvania doctrinal trends beyond the immediate context of the Local Agency Law and have found nothing to suggest that the Commonwealth Court decisions upon which we rely are aberrational. For example, in *Boresen v. Rohm & Haas, Inc.*, 526 F.Supp. 1230 (E.D.Pa.1981), Chief Judge Lord traced the development of Pennsylvania Law on wrongful discharge from the traditional position that an "at will" employment contract may be terminated by either the employer or the employee "at any time, for good reason, bad reason, or no reason at all," *id.* at 1232 (citing *Henry v. Pittsburgh & Lake Erie R. Co.*, 139 Pa. 289, 21 A. 157 (1891)), to the current position that "when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for wrongful discharge." *Id.* slip op. at 1232 (quoting *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611, 617 (1980)). Chief Judge Lord was careful to point out that *Yaindl* is not the "first case in a liberalizing trend in Pennsylvania," *id.* slip op. at 1236, and that the law of wrongful discharge still condones arbitrary discharges except when the public policy exception is applicable or in the absence of a specific statutory or contractual restriction.

Although it is not directly applicable to the case at hand, in terms of its value as evidence of a doctrinal trend, *Boresen's* survey of Pennsylvania law tends to support our conclusion. First, *Boresen* reveals that Pennsylvania's law of wrongful discharge makes exception for employment relationships subject to a specific statutory restriction. Such a statutory restriction exists in the local ordinance which governed Abraham's employment. Secondly, dismissal in violation of the local ordinance conceivably could fall within the public policy exception to the law's condonation of arbitrary discharges. At the very least, *Boresen* reveals that our conclusion is not contrary to the direction of Pennsylvania law.

Our prediction of the judgment of Pennsylvania courts finds support in the responses of other courts to questions similar to that at bar. Although it is not determinative, for the essential question before us is ultimately one of Pennsylvania law, the United States Supreme Court, in interpreting a federal statute, has held that a public employment contract subject to a "just cause" provision gave rise to a property right protected by constitutional due process. *Arnett v. Kennedy*, 416 U.S. 134, 152–53, 94 S.Ct. 1633, 1643–44, 40 L.Ed.2d 15 (1974). *See also Bishop v. Wood*, 426 U.S. at 346 n.8, 96 S.Ct. at 2078 (1976). Equally important, the Supreme Court and many Courts of Appeals have held that a state

property right was created by a "just cause" or an equivalent provision in an employment relationship and was entitled to constitutional protection. *E.g., Perry v. Sindermann, supra,* 408 U.S. 603, 92 S.Ct. 2700 (1972) (Texas law); *Thompson v. Bass,* 616 F.2d 1259 (5th Cir.) (Alabama law), *cert. den. sub nom., Thompson v. Turner,* 449 U.S. 983 (1980); *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980) (Georgia law); *Needleman v. Bohlen,* 602 F.2d 1 (1st Cir. 1979) (Massachusetts law); *Brenna v. Southern Colo. State College,* 589 F.2d 475 (10th Cir. 1978) (Colorado law); *Jacobs v. Kunes,* 541 F.2d 222 (9th Cir. 1976) (Arizona law), *cert. den.,* 429 1094 (1977).

For the foregoing reasons, we believe that the record on the summary judgment motion shows that plaintiff had a state property right in his employment which was protected by the due process clause of the Fourteenth Amendment. Defendants' motion for summary judgment is therefore denied with respect to plaintiff's due process claim.