Mahlon M. DELONG, Appellant,

v.

**UNITED STATES of America, Appellee.**

No. 78–1847.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1979.

Decided May 13, 1980.

---

Alfred F. Belcuore, Washington, D. C., (Walter H. Fleischer, Cole & Groner, P. C., Washington, D. C., on brief), for appellant.

George P. Williams, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., James Michael Kelly, Asst. Gen. Counsel, Raymond W. Fullerton, Director, Litigation Division, Thomas Edmondson, Judith A. Wenker, U. S. Dept. of Agriculture, Washington, D. C., on brief), for appellees.

Before WINTER and PHILLIPS, Circuit Judges, and DUMBAULD, Senior District Judge, Western District of Pennsylvania, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Delong, formerly the State Director of the Farmers Home Administration (FmHA) division of the United States Department of Agriculture for the State of Maine, brought this action in the United States District

Court to challenge his reassignment and transfer for political patronage reasons to a new position in Washington, D. C. His action sought, on constitutional grounds,[1] injunctive and declaratory relief designed to restore to him his former position with all related benefits, and reversal by judicial review of an administrative determination that his transfer did not violate his rights under the Veterans' Preference Act, 5 U.S.C. § 7511. The district court rejected both claims, granting summary judgment in respect of the claim for declaratory and injunctive relief and affirming the administrative decision. We affirm on the administrative claim, but reverse and remand for further proceedings on the constitutional claim in light of the intervening decision of the Supreme Court in *Branti v. Finkel*, 445 U.S. ——, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

## I

After the change in National Administration in 1977, the Secretary of Agriculture began replacing Republican state directors of FmHA with Democratic appointees, and created a "program assistant" position for incumbent Republican state directors who had statutory procedural rights as military veterans. Delong's reassignment and transfer were the result of this process.

Delong's prior position as state director for the State of Maine was classified as a "Schedule A" exception from the competitive civil service, and as one not "of a confidential or policy-determining character." It involved by job description actual responsibilities that lay questionably on the line between policymaking and nonpolicymaking. His reassigned position as project assistant carried the same pay, civil service grade (GS–15), and fringe benefits as did his prior position, but allegedly entailed reduced responsibilities. Whereas his work as state director involved supervision of about 175 employees in Maine, final authority over about $130 million annually in loans,

and administrative leadership in planning, organizing, and implementing programs in the state, Delong offered proof that as project assistant he "has had little or nothing to do," "has been given no secretary or staff and no long-range assignments," "has been doing work normally performed by employees with the grade GS–11," "has never even met Mr. Cavenaugh, the [FmHA] Administrator" to whom project assistants are supposed to report, has been "given orders for repeated travel" and "transfers to inconvenient or distant locations on short notice," and has received "petty assignments to write insignificant or useless reports and do work . . . normally done by employees with grades much lower than GS–15." On cross-motions for summary judgment, the district court concluded that as a matter of law Delong's former position was a policymaking one within the principle announced in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), so that his claim of constitutional protection for his continued employment in that position must fail on that fundamental point.

## II

*Elrod* held that the dismissal or threat of dismissal from government employment of a nonpolicymaking official because of his political belief and affiliation abridged his First Amendment rights of speech and association by imposing an unconstitutional condition upon the employment. *Id.* at 359–60, 96 S.Ct. at 2682–2683 (plurality opinion); *id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring). The basis for the holding was that

[u]nder [patronage] practice, public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party. The threat of dismissal for failure to provide that support unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise.

---

1. The claimed violations were of First Amendment rights of speech and association and Fifth Amendment due process and equal protection

rights. Because we consider the First Amendment claims dispositive of the issues on this appeal, we expressly address only those.

*Id.* at 359, 96 S.Ct. at 2683 (plurality opinion); *see id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring). On the other hand, patronage dismissals of governmental officials holding policymaking positions were said to be justified by a compelling state interest in effective "implementation of policies of the new administration." *Id.* at 367, 96 S.Ct. at 2687 (plurality opinion).

■ Because the specific decision in *Elrod* turned so critically upon the "policymaking or nonpolicymaking" inquiry, it was generally assumed that this constituted the completely dispositive inquiry with respect to any government job for which constitutionally protected status was claimed. *E. g., Johnson v. Bergland,* 586 F.2d 993 (4th Cir. 1978); *Committee to Protect First Amendment Rights of Employees of the Department of Agriculture v. Bergland,* (D.C.Cir., Dec. 27, 1979). Because *Elrod,* so understood, provided the controlling law when the district court considered the parties' cross-motions for summary judgment on Delong's claim in the instant case, both parties and the district court properly focussed on this as the threshold and possibly dispositive question for decision. As indicated, the district court resolved it against Delong. *Elrod* still controlled on this issue down through submission of this case following oral argument on appeal to this court. Following its submission, *Branti* was decided on a basis which so substantially modified this understanding of the *Elrod* principle[2] that remand for reconsideration in light of the principle as newly articulated in *Branti* is required.

In remanding, we express no view on the proper application of *Branti* to the specific facts of the instant case. That is better left for first instance consideration in the district court, where recasting of the pleadings, further pre-trial proceedings, or other reordering of the case's presentation may be appropriate to accommodate to the principle as given new expression in *Branti.*

### III

Resolution of the threshold issue whether, under *Branti,* Delong's former position carried constitutional protection against patronage burdens may not end the matter upon remand. If protection is found due, there will remain the question whether the transfer and reassignment in issue constituted an unconstitutional burden. Because both *Elrod* and *Branti* involved dismissals, neither directly addressed the question whether other burdens of the patronage system short of threatened or actual dismissal might similarly violate First Amendment rights.[3]

On this appeal the government has contended that as a matter of law a transfer and reassignment such as Delong's cannot constitute an unconstitutional burden; that *Elrod*'s protection was not intended to extend to lesser burdens than the dismissal there involved. To the contrary, Delong contends that *Elrod*'s principle, as opposed to its specific rule of decision, sweeps wider than threatened or actual dismissals and includes other patronage burdens of less ultimate severity. Delong finds support for this general proposition in several lower federal court decisions;[4] and, more critical-

2. Epitomized in the following passage from the Court's opinion:
   "In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."
   *Branti v. Finkel,* 445 U.S. at ——, 100 S.Ct. at 1297.

3. In *Ramey v. Harber,* 589 F.2d 753, 757 (4th Cir. 1978) we expressly noted that in *Elrod* "the concurrence of Justices Stewart and Blackmun in the plurality opinion explicitly limited the

Court's holding to patronage dismissals," because " 'the narrow position of the concurrence must be taken as the holding of the Court.' " *See Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).

4. *Miller v. Lincoln County Bd. of Educ.,* 450 F.Supp. 106 (S.D.W.Va.1978) (transfers, demotions, terminations); *Vega Matta v. Alvarez de Choudens,* 440 F.Supp. 246 (D.P.R.1977) (transfer followed by termination); *Tanner v. McCall,* 441 F.Supp. 503 (M.D.Fla.1977) (harassment or discharge within *Elrod*'s proscription but not proved); *DeLuca v. Sullivan,* 450 F.Supp. 736 (D.Mass.1977) (failure to promote); *Cullen v.*

ly, urges that *Johnson v. Bergland, supra,* decided by this court after entry of the district court judgment in the instant case, establishes as the law of this circuit that a patronage transfer and reassignment such as Delong's constitutes an unconstitutional burden upon protected employment.

We agree with Delong and against the government that the *Elrod-Branti* principle must be construed to provide protection against a wider range of patronage burdens than threatened or actual dismissals. This much we did recognize in *Johnson* in the course of reversing the denial of interlocutory injunctive relief to a claimant facing a patronage transfer like Delong's. But even though the claimant in *Johnson* held the same government position as Delong's our decision in that case committed us only to the view that comparable transfers *might* violate the *Elrod-Branti* principle, not that all *would* as a matter of law.[5] Just as the issue whether protection exists at all with respect to a particular position is one to be decided under *Branti* on the circumstances defining the special character of the position, so is the issue whether a particular transfer or reassignment violates any protected rights one to be decided on the specific facts of the case. As with disputed issues in general, the latter issue like the former may be resolved as one of law or fact depending upon the evidence adduced.

Because it may be necessary upon remand to decide whether Delong's transfer and reassignment falls within the pro-

scribed area, we must do here what was not required in *Johnson* : define the legal standard by which the determination is to be made. That standard can only be derived by looking to the broader principle of unconstitutional burdens on government employment that in *Elrod* and again in *Branti* were applied specifically only to dismissals. That broader principle, expressly drawn upon in *Elrod,* is that the government

> may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.
>
> This would allow the government to 'produce a result which [it] could not command directly' [citation omitted]. Such interference with constitutional rights is impermissible.

*Elrod v. Burns,* 427 U.S. at 359, 96 S.Ct. at 2683 (quoting from *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)).

Dismissal or the threat of dismissal for political patronage reasons is of course the ultimate means of achieving by indirection the impermissible result of a direct command to a government employee to cease exercising protected rights of free political association and speech. This is *Elrod*'s and *Branti*'s specific, narrow application of the principle. We believe that when the principle is applied to patronage prac-

---

*New York State Civil Service Comm.,* 435 F.Supp. 546 (E.D.N.Y.1977) (same).

5. In *Johnson* the issue was addressed in the course of reviewing the propriety of denying a preliminary injunction against the transfer, specifically in considering the question of irreparability of harm to the government employee if the transfer went through. In that context we said that, assuming the other elements of constitutional violation to be present, "the fact that [plaintiff] was relocated in a distant state shortly after being [reassigned] would suffice to establish "per se irreparable injury." *Id.* Given the context in which this statement was made—an assessment of probable irreparability of harm in the course of determining the

propriety of denying interim injunctive relief— we do not consider it a declaration of substantive principle that all patronage transfers impose unconstitutional burdens upon government employment. In the procedural posture of the *Johnson* appeal, the court never reached the question of likely success on the merits, and certainly not the actual merits of the plaintiff's underlying substantive claim. As indicated in text, we therefore consider that *Johnson* held authoritatively on this point only that a particular patronage transfer or reassignment *might* unconstitutionally burden government employment, depending upon standards whose articulation was not required in the procedural posture of the case there on appeal.

tices other than dismissal it is rightly confined to those that can be determined to be the substantial equivalent of dismissal.

In applying the principle, so limited, to the actual or threatened reassignment or transfer of a government employee, the issue thus becomes whether the specific reassignment or transfer does in fact impose upon the employee such a Hobson's choice between resignation and surrender of protected rights as to be tantamount to outright dismissal. This much and no more, we conclude, is a necessary implication from the broader principle drawn upon in *Elrod* and recognized without dispositive application by this court in *Johnson*. It is obvious that not every reassignment or transfer can fairly be thought to have this quality. It is equally obvious that in practical terms some might.

The factual test, so posed, is admittedly a difficult one for application, but the necessity cannot be avoided if the issue is squarely presented, as it may be upon remand in this case. Against that possibility, we offer these observations for guidance.

Critical to the factual determination required should be both objective and subjective factors pertaining to the officeholder's expectations and reliance upon the continuation of particular assignments and geographical locations in his employment. Only reasonable expectations and reliance should be weighed in the balance. In general terms, a government employee should not be thought reasonably entitled to any higher expectations and reliance in these respects than would persons comparably situated in private employment. The exigencies of reassignment and transfer normally incident to comparable levels of executive employment in the private sector of business and industry should generally be assumed normal incidents of government employment, without regard to the specific motivation behind a challenged transfer or reassignment. At the same time, in gauging the impact of a challenged patronage transfer or reassignment, it would be appropriate to take into account any special circumstances, including subjective expectations and reliance on the officeholder's part

in relation to the particular position held, that were actually or constructively known to the official making or threatening the transfer or reassignment, and that might reasonably be thought to increase the difficulty of the choice imposed upon the employee. For the same reason, any prior employment history of the officeholder that might bear upon the actual severity of impact of the challenged reassignment or transfer would be relevant to the inquiry. The ultimate issue, as indicated, is whether, all things considered, the challenged reassignment and transfer can reasonably be thought to have imposed so unfair a choice between continued employment and the exercise of protected beliefs and associations as to be tantamount to the choice imposed by threatened dismissal.

### IV

Delong also challenged his transfer and reassignment under the Veterans' Preference Act, 5 U.S.C. § 7511, which provides that "[a]n agency may take adverse action against a preference eligible employee . . . only for such cause as will promote the efficiency of the service." *Id.*, § 7512(a). The Act defines "adverse action" as "a removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay." *Id.*, § 7511(2). In his administrative appeal Delong argued that his reassignment, though it involved no reduction in civil service grade or in salary, constituted a reduction in rank because the duties and responsibilities of the new position, as it actually developed, were inferior to those of the old. The Federal Employee Appeals Authority ruled that under Commission policy, the reduced responsibilities alleged by Delong were not indicia of "rank," which is based solely on an employee's official position. Because Delong's transfer did not lower his standing in the agency's organizational structure, the FEAA concluded that no reduction in rank, and therefore no "adverse action," had occurred. It thus dismissed the appeal for lack of jurisdiction, without considering the merits of the reassignment.

On Delong's appeal of the administrative ruling, the district court found

that it was not arbitrary or capricious, and affirmed the ruling based on the administrative record. Delong contends that the court erred by not holding a de novo hearing and taking additional evidence on the actual duties and responsibilities of his new position, because his allegation that these did not conform to the official position description formed the basis of his claim of reduction in rank. But such a wide-ranging inquiry was not contemplated by the terms of the Veterans' Preference Act. "Reduction in rank," like "adverse action," has a narrow definition in this context. Under Commission policy, it refers only to the employee's *official* position and its standing in the structure of the organization. We think the Commission's disposition of the appeal was obedient to the statute and not unreasonable.[6] Moreover, given the confined nature of the inquiry, we see no inadequacy in the agency's factfinding procedures that would require de novo review of the action in the district court, *see Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). In this case we think the district court properly based its review and resulting decision on the administrative record alone, and properly deferred to the Commission's ruling. *See Leefer v. Administrator, National Aeronautics and Space Administration,* 543 F.2d 209 (D.C.Cir. 1976).[7]

*AFFIRMED IN PART; REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN PART.*

DUMBAULD, Senior District Judge, concurring:

In my view the extent of the actual holding in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), [a case upon which appellant necessarily relies to establish a cause of action], is measured by Mr. Justice Stewart's statement that

"The single substantive question involved in this case is whether a nonpolicy-making nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot." 427 U.S. at 375, 96 S.Ct. at 2690.[1]

*Elrod* should be interpreted, in my opinion, as an "exemplification of the general principle that exercise of federally guaranteed rights, especially freedom of speech, must not be penalized." *Mulherin v. O'Brien,* 588 F.2d 853, 857 (C.A. 1, 1978).

Consequently I would conclude that appellant's situation does not fall within *Elrod.* He has not been discharged, or threatened with discharge. He has simply been *transferred* to another job with equal rank

---

**6.** The Federal Personnel Manual Supplement interpreting the critical statutory language states that a "reduction in rank" may occur even though an employer "has not been reduced in numerical grade, or class, or level," when an official personnel action "results in a lowering of his relative standing in the agency's organizational structure." Jt.App. 324. But "relative standing" is "determined by his official position assignment." Accordingly, though the term "reduction in rank" encompasses more than a grade or class reduction, the question of "relative standing" may be determined only by reference to an employee's official position description, and not to his actual duties which he alleges are different. Here the Appeals Review Board considered the question of Delong's relative standing, and concluded that it had not been reduced because in both positions his immediate supervisor was the FmHA Administrator. Under the governing regulations, this was the proper inquiry. The district court's "finding" (App. 313) that De-

long's responsibilities were substantially reduced and that his duties were of substantially less prestige and significance may therefore be relevant on the question whether the transfer imposed an unconstitutional burden, but they are not relevant on whether, according to his *official* standing in the organization, Delong was "reduced in rank." *See* note 7, *infra.*

**7.** Affirmance of the narrow determination that within statutory contemplation there has occurred no reduction in official rank constituting "adverse action" clearly can have no preclusive effect in respect of Delong's claim that the reassignment constituted an unconstitutional burden on his First Amendment rights. Resolution of that claim requires a different inquiry.

**1.** Mr. Justice Brennan's "wide-ranging opinion" [427 U.S. at 374, 96 S.Ct. at 2690] was accepted by only two other Justices.

and pay (both being policymaking jobs, in my estimation).[2] The Civil Service Commission correctly held that there had been no adverse action affecting him, however unhappy he may be in leaving the lobster-pots of Maine for the hot summers of the nation's capital.[3]

Moreover, appellant did not demonstrate in brief or argument any specific assertion of free speech. It was not even stated that he was a registered voter in any party. He did not courageously and patriotically expose any corruption or inefficiency in the Department of Agriculture.[4]

In fact the record is consistent with an inference that the transfer complained of was merely a "new broom" replacement of appellant by someone his superior felt he could work with more satisfactorily. Such personnel changes often occur in the private sector, for example when a corporate takeover results in a shakeup in the executive suite. Appellant did not convincingly demonstrate that his transfer was due to political factors rather than personal "new-broom" preferences on the part of his superiors.

In my judgment the holding of the District Court and of the Civil Service Commission should be sustained. However, the majority in *Johnson v. Bergland*, 586 F.2d 993, 995 (C.A. 4, 1978), seems to hold that being "relocated in a distant state" might "suffice to establish an infringement of . . . first amendment rights." Although this goes beyond what was authoritatively held in *Elrod*, I am bound to accept it as the law of the Fourth Circuit, and therefore concur in remand to the District Court for determination of the factual issues whether appellant's position in Maine was of a policymaking nature[5] and whether his transfer was equivalent in coercive impact to dismissal or threat of dismissal. I agree entirely with the majority's affirmance of the District Court's conclusion that there was no "adverse action" against appellant because he suffered no "reduction in rank or pay."

---

2. The fact that the Civil Service Schedule classified his job as nonpolicymaking (*i. e.*, not involving *nationwide* policy formulation) is not conclusive with respect to the scope of policymaking as understood by Mr. Justice Stewart.

3. As Judge K. K. Hall commented in his dissent in *Johnson v. Bergland*, 586 F.2d 993, 996 (C.A. 4, 1978), it is hard to believe that "a job transfer to Mississippi is an injury of constitutional magnitude, a proposition which might startle the citizens of that state."

4. Compare the cases of the school teacher who was dismissed for publishing in a newspaper a letter criticizing the school board for spending too much money for athletic fields instead of teachers' salaries, or the welfare worker who criticized irregularities in administration of the food stamp program. 588 F.2d at 856–57.

5. In view of the modification of *Elrod* by the majority of the Supreme Court in its 5–4 decision in *Branti v. Finkel*, 445 U.S. ——, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), after this opinion had been written, I must substitute "whether appellant's position in Maine was one in which party affiliation is a legitimate factor to be considered and an appropriate requirement for the effective performance of the public office involved" for the words "whether appellant's position in Maine was of a policy-making nature." In my view the new *Branti* criterion will be no more helpful to appellant than the *Elrod* test was; and neither *Elrod* nor *Branti* deals with transfer as distinguished from discharge.