Nikki LIEBERMAN, Plaintiff–Appellant,

v.

Herbert REISMAN, Supervisor, George Conklin, former Supervisor, Isaac Goodfriend, Maxwell Wortman, Emanuel Weldler and David Stein, Councilmen, and Debra Chiat and Hyman Jatoff, Former Councilmen, constituting the Town Board of the Town of Ramapo, Defendants–Appellees.

No. 845, Docket 87–7993.

United States Court of Appeals, Second Circuit.

Argued March 22, 1988.

Decided Sept. 15, 1988.

David M. Wagner, New City, N.Y. (Freedman, Wagner, Tabakman, Weiss & Insler, New City, N.Y., of counsel), for plaintiff-appellant.

William R. Sichol, Suffern, N.Y. (Sichol & Hicks, Suffern, N.Y., of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, and CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge.

This appeal from a dismissal of plaintiff's complaint in the Southern District of New York presents a single issue: whether unfavorable action not rising to the level of a discharge taken against a town employee based on her political affiliation may give rise to a constitutional claim cognizable under 42 U.S.C. § 1983 (1982)? We hold that it may and therefore reverse the district court's contrary conclusion respecting Count II of plaintiff's complaint.

## FACTS

The facts may be stated briefly. In January 1982 appellant Nikki Lieberman was appointed as his confidential assistant by Frederick Rella, a Republican then serving as Town Supervisor of the Town of Ramapo, Rockland County, New York. Mr. Rella died on December 25, 1984 during his term of office. George Conklin, a Democrat, was appointed to succeed him for the balance of his unexpired term. Conklin did not discharge Nikki Lieberman, permitting her instead to continue as his confidential assistant until the expiration of his appointive term on December 31, 1985.

Appellant held her position pursuant to N.Y. Town Law § 29(15) (McKinney 1985 & Supp.1987), which grants a Town Supervisor authority to appoint a confidential assistant to serve at his pleasure at a salary fixed by the Town Board. The position is a non-competitive appointment and those appointed perform such duties as the Supervisor may determine. In this case appellant's salary was fixed by the Town Board of Ramapo at $26,424.59 per year. The position of confidential assistant was not covered under the terms of the collective bargaining agreement between the Town and the Civil Service Employees Association, but the Town Board voted confidential assistants vacation pay and other benefits equivalent to those provided under the collective bargaining agreement.

In the fall of 1985 Nikki Lieberman ran unsuccessfully as the Republican candidate for the position of Legislator on the Rockland County Board of Legislators. She asserts that because she chose to run for public office as a Republican, the appellees, members of the Town Board of Ramapo (all of whom except for Emanuel Weldler are Democrats), retaliated politically against her. As a result of their alleged actions against her, appellant instituted the instant § 1983 action in the United States District Court for the Southern District of New York (Goettel, J.). She makes no claim of actual discharge from her position as confidential assistant.

In her complaint appellant asserts that appellees harassed and discriminated against her because of her Republican affiliation and her campaign for public office. These allegations are set forth in six counts of her civil rights complaint: Count I claims $26,238.08 in compensation for 39 weeks of accrued "compensatory time" and nine weeks of unused vacation time; Count II asserts that other "similarly situated" town employees were treated more favorably with respect to compensatory and va-

cation time than she was and that the difference in treatment is attributable to retaliation for her political activities; Count III alleges sexual harassment; Count IV contends that appellee Conklin harassed her regarding her political campaign; Count V asserts a deprivation of information concerning continuing her health insurance coverage; and Count VI contends that appellees used various tactics against her in retaliation for her political activities, including verbal threats, ransacking her office, taking personal documents, vandalizing her automobile in the Town Hall parking lot, and interfering with her personal mail.

Appellees moved to dismiss the complaint and, after discussing each of the above counts, Judge Goettel granted the motion. He granted the defendants' motion to dismiss the Count II cause of action because he considered the leading Supreme Court decisions on unfavorable political patronage actions to be limited to dismissals, and he refused to extend constitutional protection to a denial of compensatory and vacation time payments. For similar reasons the district judge dismissed the claims in Counts IV and V. The district court further held that the sexual harassment charged in Count III failed to allege any deprivation of a federal right and therefore did not state a cognizable § 1983 claim. The first and sixth counts of the complaint were dismissed without prejudice because Judge Goettel believed that those counts raised (except for possible interference with the U.S. mails) essentially questions of state contract and tort law. Having dismissed the other four counts, the district judge declined to exercise pendent jurisdiction over these two state law claims.

We affirm Judge Goettel's dismissal of Counts III, IV and V, for substantially the reasons stated in his opinion. The dismissal of Count II, alleging that Lieberman was denied certain compensation in retaliation for her political activities, must be reversed and, upon remand, it and Counts I and VI must also be reconsidered. Of course, if Count II does not survive a motion for summary judgment on remand, the district court need not further consider Counts I and VI.

## DISCUSSION

### A.

Despite the vague and conclusory nature of plaintiff's pleading, in appraising the sufficiency of her Count II claim a court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accordingly, plaintiff's allegations that her demands for payment relating to compensatory time and vacation time were denied solely because of her political affiliation are accepted as true.

The single question on appeal then is whether this sort of claimed political retaliation not amounting to actual discharge of a public employee is actionable under 42 U.S.C. § 1983 (1982). Section 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Analysis of the political retaliation question must begin with *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), in which the Supreme Court held that dismissing a public employee for political patronage reasons violates the employee's First Amendment right. The *Elrod* plaintiffs—Republicans working as non-civil service Sheriff's office employees—alleged that they were discharged or threatened with discharge after a Democrat was elected to replace a Republican sheriff solely because they were not affiliated with or

sponsored by the Democratic party. *Id.* at 350, 96 S.Ct. at 2678. Although the Court could not agree to a majority opinion, it affirmed the lower court's holding that plaintiffs had stated a cognizable claim and its order of preliminary injunctive relief.

The plurality opinion, authored by Justice Brennan and joined by Justices White and Marshall, advanced two rationales for affording plaintiffs relief. The first rationale was that the practice of political patronage tends to constrain an employee's "ability to act according to his beliefs and to associate with others of his political persuasion." *Id.* at 356, 96 S.Ct. at 2681. This view did not garner the vote of any of the remaining five justices taking part in the case. The second reason for the Court's holding drew, in part, upon *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), an earlier decision rejecting the validity of conditioning the receipt of government benefits on limitations on First Amendment rights. In concluding that an untenured college professor's allegation that he was not rehired because he had publicly criticized the college administration stated a cognizable claim, the *Perry* Court commented, "if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Id.* at 597, 92 S.Ct. at 2697. Justice Brennan wrote in *Elrod* that political patronage practice "falls squarely within the prohibitions of ... *Perry*" because "[t]he threat of dismissal for failure to provide [support for the favored political party] unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise." *Elrod,* 427 U.S. at 359, 96 S.Ct. at 2683. In a concurring opinion Justices Stewart and Blackmun cited *Perry* in endorsing the plurality opinion's second rationale. *Elrod,* 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).

But the plurality and concurring opinions both noted that the prohibition against patronage dismissals is not absolute: the interest in protecting First Amendment rights is balanced against the need for governmental efficiency, especially the need to insure that electorate-sanctioned policies are effectively implemented. Therefore, they concluded, dismissal of policymaking or confidential public employees for political patronage purposes does not offend First Amendment principles. *See id.* at 372–73, 96 S.Ct. at 2689–90 (plurality opinion); *id.* at 375, 96 S.Ct. at 2690 (concurring opinion). In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court reformulated the counterweight to the rule against patronage dismissals. Instead of concentrating on "whether the label 'policymaker' or 'confidential' fits a particular position," the Court held that "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1294. With these Supreme Court rulings in mind, we analyze the question presented on this appeal.

### B.

We have not previously considered whether unfavorable patronage actions not rising to the level of a discharge may support a claim under § 1983. *Cf. Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987) (dismissing plaintiff administrative law judge's First Amendment complaint on qualified immunity grounds because "federal law was far from 'clearly established' with respect to whether the prohibition against patronage dismissals extended to administrative law judge positions" when plaintiff was not reappointed); *Dusanenko v. Maloney,* 726 F.2d 82 (2d Cir.1984) (per curiam) (without commenting on the district court's refusal to extend *Elrod,* we affirmed district court's dismissal of town officials' claim that their salaries were cut because they did not support the defendant Town Board members' candidacies on ground that defendants submitted uncontested affidavits of nonpolitical reasons for the paycuts).

One circuit has confined application of *Elrod*'s principle against political patron-

age only to those patronage practices "that can be determined to be the substantial equivalent of dismissal." *See Delong v. United States*, 621 F.2d 618, 623–24 (4th Cir.1980) (remanding for consideration of whether plaintiff's transfer and reassignment rose to the level of a discharge). Appellees argue that for us to rule that the denial of compensatory and vacation time payments states a § 1983 claim without appellant's being actually discharged would unduly extend the protections of *Elrod*. We disagree.

Whenever under color of state law unfavorable action is taken against a person on account of that person's political activities or affiliation, it raises First Amendment concerns. Here plaintiff alleges that defendants refused to pay her for earned compensatory and vacation time because of her political activities. Plaintiff asserts that defendants' political retaliation imposed an unconstitutional burden on receipt of a public benefit contrary to the teachings of *Elrod*. Whatever its merits, plaintiff's complaint states a civil rights cause of action sufficient to escape dismissal. *See Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir.1987) ("[T]he constitutional violation is not in the harshness of the sanction applied, but in the imposition of any disciplinary action for the exercise of permissible free speech."); *Robb v. City of Philadelphia*, 733 F.2d 286, 295 (3d Cir.1984) (civil service employee-plaintiff set forth the "bare bones" of a § 1983 claim by alleging that defendants failed to promote him and transferred him because of his refusal to settle a private lawsuit, his union activities, and statements he made to the press); *Yoggerst v. Stewart*, 623 F.2d 35, 39 (7th Cir. 1980) (verbal reprimand and notation in a state agency employee's personnel file in response to her comment derogatory to the director "may have had a chilling effect, which is legally cognizable, upon her exercise of free speech").

While, as noted, a public employee's First Amendment interests are not absolutely protected, to affirm the dismissal of plaintiff's second cause of action might condone politically motivated harassment or other unconstitutional treatment of public employees in those cases where the public employer's action stops short of actual discharge.

## CONCLUSION

Although Lieberman's second cause of action substantially restates a state law breach of contract claim, the alleged pretext for the defendants' refusal of payment —namely, retaliation for Lieberman's political affiliation and activities—elevates Count II to a constitutional claim cognizable under § 1983. Upon remand, to survive a motion for summary judgment, plaintiff must present evidence demonstrating that she was entitled to and denied a benefit, and that the reason for that denial was political retaliation. Moreover, defendants may offer proof of a nonpolitical motivation for refusing, if such is the case, to make payments to plaintiff for compensatory and vacation time. Only if Count II survives defendants' motion for summary judgment will the district court need to consider Counts I and VI.

AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.