James **WALSH**, Plaintiff,

v.

Pat **WARD** and Thomas Oseland, each individually and in his official capacity as Director of the Department of Public Safety and Fire Chief, respectively of the City of Springfield, Illinois, Defendants.

No. 90–3250.

United States District Court, C.D. Illinois, Springfield Division.

March 1, 1991.

**960**

James P. Baker, Springfield, Ill., for plaintiff.

James K. Zerkle, Corp. Counsel, Gary S. Rapaport, Corp. Counsel, City of Springfield, Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

In the aftermath of the Supreme Court's decision in *Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), several prominent issues regarding retroactivity and qualified immunity necessarily have arisen.

This case, in part, involves such questions.

### I. Facts

The Plaintiff, James Walsh, was hired by the City of Springfield as a firefighter in 1972 and rose through the civil service system to the rank of Battalion Chief in 1988. Pat Ward is the elected director of the Springfield Department of Public Safety which encompasses the fire department. Thomas Oseland is the Fire Chief of the City of Springfield and serves at the will of the Director of Public Safety.

Prior to his elevation to the position of Battalion Chief, Plaintiff was employed as a Captain and assigned duties with an engine company. Plaintiff's work schedule required a 24–hour shift followed by 48–hours off-duty. Because of this schedule he enjoyed the opportunity to engage in employment and business opportunities independent of his duties as a firefighter during his off-duty hours.

During October 1988, after placing first on the civil service examination, Plaintiff was promoted to the rank of Battalion Chief and assigned a position with the training division of the Springfield Fire Department. Because of his new assignment, Plaintiff was required to work a "normal" 40 hour work week thus losing the opportunity to engage in outside employment. Plaintiff allegedly is less qualified for the training position than other individuals who placed lower on the civil service eligibility list for Battalion Chief and who were appointed to that rank. Traditionally, the most senior individual on the eligibility roster (Plaintiff) would have his selection of shift assignments.

Plaintiff alleges that "for many years" he has openly expressed critical opinions regarding the manner in which Pat Ward performed his role as Director of the Department of Public Safety and, from time to time, supported candidates for elective office who ran against Pat Ward. Plaintiff's assignment to the training position by Defendants is allegedly in retaliation for his "expressions of political views."

Plaintiff alleges that Defendants' retaliation violates the first and fourteenth amendments and seeks compensatory and punitive damages, attorney's fees and costs pursuant to 42 U.S.C. §§ 1983, 1988.

Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b) on three grounds. First, Defendants argue that Plaintiff's cause of action is barred by the two-year statute of limitations governing § 1983 actions. Second, Defendants contend that *Rutan* should not be applied retroactively. Third, to the extent that they are sued in their individual capacities, Defendants argue that they enjoy qualified immunity.

## II. Motion to Dismiss

In ruling on a motion to dismiss, the Court "must accept the well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the Plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). The applicable rules do not necessitate a detailed outline of the claim's basis. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Still, a "complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

## III. Analysis

### A. *Statute of Limitations*

■ Plaintiff filed this action on October 5, 1990. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) the Supreme Court held that the applicable statute of limitations for § 1983 claims is the state period for personal injury torts. Recently in *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) the Supreme Court reaffirmed its holding in *Wilson* and held that all § 1983 actions are to be governed by a single state limitation period for torts in general rather than a statute of limitations limited to specific intentional torts.

Under Illinois law, a general two-year statute of limitations applies to tort actions. Ill.Rev.Stat. ch. 110, ¶ 13–202. *See Kalimara v. Illinois Dep't of Corrections*, 879 F.2d 276, 277 (7th Cir.1989).

In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (*per curiam*), the Supreme Court held that the statute of limitations for a § 1983 action begins to run at the time notice is given of the discriminatory act. *Id.* at 8, 102 S.Ct. at 29 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). Such notice can be oral. *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir.1986).

Defendants, relying upon an affidavit submitted by Oseland,[1] argue that Plaintiff received oral notice of his assignment to the training division on or before October 4, 1988. This notice was allegedly provided by Oseland during a telephone conversation with Plaintiff occurring sometime between September 29 and October 4, 1988. Plaintiff has responded with his own affidavit wherein he states that he first learned of his promotion and reassignment during a telephone conversation with Elmer Renfro, a Deputy Chief in the Springfield Fire Department, on October 8, 1988. Plaintiff further states that it was not until October 11 that he first spoke with Oseland regarding his transfer.

Clearly a genuine issue of material fact exists concerning the date on which Plaintiff learned of the allegedly discriminatory act. Thus, Defendants' motion for summary judgment on this issue must be denied.

### B. *Retroactivity of Rutan*

■ Defendants' second argument in support of their motion to dismiss is that Plaintiff's action is premised on the Court's decision in *Rutan* and that decision should not be applied retroactively. Plaintiff admits that *Rutan* strengthens his case but denies that this action must be dismissed if *Rutan* is applied prospectively only.

1. Consideration of matters outside the pleading converts Defendants' motion to dismiss into a motion for summary judgment pursuant to Rule 56. Plaintiff has responded accordingly and thus we will consider Defendants' motion to dismiss, insofar as it raises the statute of limitations as a defense, as a motion for summary judgment.

In *Rutan* the Court considered a challenge under the first and fourteenth amendments to a wide variety of political patronage practices within the Illinois state government. The Court extended the rule first announced in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) prohibiting patronage dismissals to lesser retaliatory measures including promotions, transfers, recalls and hiring. *Rutan*, 110 S.Ct. at 2737–39.

Generally, federal cases are decided in accordance with the law existing at the time of the decision. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 2621–22, 96 L.Ed.2d 572 (1987). In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) the Court announced an exception to this general rule. In that case the Court considered whether a decision abandoning the equitable doctrine of laches in favor of a one-year state statute of limitations governing actions under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, should be applied retroactively so as to bar an injured worker's action under the Lands Act.

There are three factors a court must consider in determining whether to apply a decision prospectively only. *First,* whether the new rule establishes a new principle of law, either by overruling established circuit precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Second,* the court must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation. *Third,* the court must consider the inequity imposed by retroactive application. *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355–56.

Following the Court's 1976 decision in *Elrod,* three circuits held that *Elrod* would be applied only prospectively. *See Ramey v. Harber,* 589 F.2d 753 (4th Cir.1978), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979); *Aufiero v. Clarke,* 639 F.2d 49 (1st Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1985);

*Marino v. Bowers,* 657 F.2d 1363 (3d Cir. 1981) (*en banc* ).

In *Marino* the Third Circuit, in considering a Pennsylvania county boardmember's challenge to his patronage dismissal, found that, while it was possible through hindsight to reconstruct a foreshadowing of the *Elrod* holding, the *Elrod* decision effectively overruled a Pennsylvania Supreme Court ruling upholding patronage dismissals on which the county board had relied. *Marino,* 657 F.2d at 1368.

In considering the second *Chevron* factor the circuit court in *Marino* saw "no reason why the prospective application of *Elrod* would not be sufficient to vindicate the constitutional principle it enunciated." *Id.* at 1369. The final and most compelling factor is the inequitableness of retroactive application. In *Marino* and *Ramey* the courts reasoned that applying *Elrod* retroactively would require the displacement of numerous governmental employees in favor of those who had been discharged pursuant to the patronage system. In concluding its analysis, the *Marino* court, as did the First and Fourth Circuits in *Aufiero* and *Ramey,* held that *Elrod* should not be applied retroactively.

Applying the *Chevron* analysis to the case *sub judice* yields a different result.

(1) The *first factor,* whether *Rutan* established a new principle of law, either by overruling clear past precedent on which litigants relied or by deciding an issue of first impression whose resolution was not "clearly foreshadowed," must be answered in the negative.

Following the Court's decision in *Elrod* and its subsequent consideration of the issue in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), a split developed among the circuits concerning whether the rule prohibiting patronage dismissals would be extended to lesser forms of retaliation such as hiring, promotion, and transfers.

In *Delong v. United States,* 621 F.2d 618 (4th Cir.1980) the Fourth Circuit held that *Elrod*'s principle applied to patronage practices short of dismissal only if they were the "substantial equivalent of dismis-

sal." *Id.* at 624. In fact, the Seventh Circuit's opinion in the *Rutan* case adopts the *Delong* analysis as "the more sound." *Rutan v. Republican Party of Illinois,* 868 F.2d 943, 951 (7th Cir.1989), *aff'd in part and rev'd in part,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

On the other hand, in *Bennis v. Gable,* 823 F.2d 723 (3d Cir.1987) the Third Circuit held that a public employee's patronage based demotion fell within the prohibition of *Elrod.* Similarly, in *Lieberman v. Reisman,* 857 F.2d 896 (2d Cir.1988) the Second Circuit held that a public employee stated a cause of action under the *Elrod* principle by alleging that she was denied compensatory and vacation time because of her partisan affiliation and campaign for public office.

At the time of the events in the case at bar, October 1988, there was no clear precedent in the Seventh Circuit governing the question of whether the rule of *Elrod* would be applied to patronage based transfers. It was not until 1989, in *Rutan* itself, that the Seventh Circuit adopted the "constructive discharge" theory of *Delong* and rejected the more liberal Second and Third Circuit decisions. Therefore, the Court's decision in *Rutan* did not overrule clear circuit precedent which existed during October 1988. Nor can it be said, in light of *Bennis* and *Lieberman,* which had both been decided by October 1988, that the Court's decision in *Rutan* was not foreshadowed. Therefore, we must conclude that the first *Chevron* factor counsels in favor of retroactive application.

(2) The *second factor* focuses upon whether retroactive application of the rule announced in *Rutan* will further or retard its operation. This process generally entails a balancing of the benefits to be gained by applying *Rutan* retroactively against the considerations of reliance, hardship, injustice, and the impact on the "administration of justice." *Ramey,* 589 F.2d at 759.

While it may be that applying *Rutan* only prospectively would be sufficient to vindicate the constitutional principle in question, Defendants would be hard pressed to argue that they relied on the "constructive discharge" theory announced in *Delong* such that retroactive application would be inequitable. Thus, the second *Chevron* factor seems to have little role to play in the analysis of this particular question.

(3) Turning to the *third factor,* the inequitableness of retroactive application, Plaintiff seeks only damages for his loss of outside employment opportunities. In each of the decisions applying *Elrod* only prospectively the plaintiffs sought injunctions restoring them to their prior positions as well as damages. Thus, in the case at bar we are not confronted with the specter of displacing "blameless" employees in favor of the Plaintiff or in requiring the City of Springfield to "double up" on its municipal employees to rectify past wrongs. Thus, the third factor also suggests retroactive application.

In consideration of the foregoing analysis, we must conclude that *Rutan* will be applied retroactively in this case. Therefore, even assuming Plaintiff's case rested entirely upon the rule of *Rutan,* Defendants' motion to dismiss on this ground would be denied.

As will be discussed shortly, however, Plaintiff's case does not depend solely upon the *Rutan* decision.

### C. *Qualified Immunity*

■ Defendants' final argument in support of their motion to dismiss is that, to the extent they are sued in their individual capacities, they are immune from liability pursuant to the doctrine of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In *Harlow* the Supreme Court eliminated the subjective good faith element from the qualified immunity analysis and held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly estab-

lished statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In short, the "qualified immunity analysis entails a purely objective inquiry to determine whether at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Auriemma v. Rice,* 910 F.2d 1449, 1452–53 (7th Cir.1990).

By October 1988, it was clearly established that political patronage dismissals of non-policymaking employees violated the first and fourteenth amendments. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Laidley v. McClain,* 914 F.2d 1386, 1394–95 (10th Cir.1990) (qualified immunity denied for alleged unlawful patronage dismissal).

On the other hand, it was not until June 1990, that this rule was clearly extended to other activities such as transfers, recalls, hiring, and promotions. *Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Thus, to the extent that Plaintiff is suing the Defendants in their individual capacities they are entitled to qualified immunity on any claims based upon the Court's *Rutan* decision. *See Nunez–Soto v. Alvarado,* 918 F.2d 1029, 1031 (1st Cir.1990) (qualified immunity applied to patronage based demotion).

In their memorandum Defendants noted that Plaintiff has also sued them in their official capacities and therefore this action must be considered one against the City of Springfield as well. *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Municipalities cannot assert the defense of qualified immunity. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). However, municipalities are not vicariously liable under § 1983 for the actions of their employees. *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

It is unclear from Plaintiff's complaint whether he seeks to actually sue the City of Springfield. The City was not named as a separate Defendant and the complaint does not allege any unconstitutional policy or custom pursuant to which the City could be liable. We leave it to Plaintiff in his amended complaint to clarify this question.

### D. *Non–Rutan Claims*

█ In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) the Supreme Court established that a public employee's right to speak on matters of public concern was protected by the first amendment. If an employee addresses matters of public concern, the court then must engage in a balancing test, weighing the interest of the employee, as a citizen, in commenting upon matters of public concern with the interest of the State, as an employer, in promoting effective and efficient public service. *Knapp v. Whitaker,* 757 F.2d 827, 839 (7th Cir.), *cert. denied,* 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985).

Plaintiff alleges that "for many years [he] has openly expressed his opinions of the Defendant, PAT WARD, with respect to the manner in which the Defendant, PAT WARD, performed his role as the Director of the Department of Public Safety...." ¶ 7. However, Plaintiff then alleges that he was assigned to the training division "because of the expressions of [his] political views...." ¶ 14A.

Defendants argue that every circuit court requires a degree of specificity in pleading complaints under the civil rights statutes. *See Hobson v. Wilson,* 737 F.2d 1, 30 n. 87 (D.C.Cir.1984) (citing cases), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). While the cases collected in the *Hobson* decision generally involved complaints containing only conclusory, vague, and general allegations under the civil rights statutes, Plaintiff in the case at bar has apparently failed to plead the essential causative requirement for any *Pickering*-based violation.

## IV. Conclusion

Defendants' motion to dismiss (construed as a motion for summary judgment) must be denied insofar as it raises the statute of limitations as a defense.

Plaintiff's complaint sufficiently raises a claim pursuant to *Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) although the Defendants enjoy qualified immunity on this claim to the extent that they are sued in their individual capacities.

Qualified immunity does not apply to the Defendants as to their official capacities; however, it is unclear whether Plaintiff intends to proceed against the City of Springfield on the theory of municipal liability. We leave it to Plaintiff to clarify this in his amended complaint.

Furthermore, Plaintiff's complaint is deficient as to his claim that the Defendants retaliated against him for his criticism of the manner in which Pat Ward performed his role as Director of the Department of Public Safety.

*Ergo,* Defendants' motion to dismiss (d/e 4) is ALLOWED and Plaintiff is GRANTED leave to file an amended complaint within 20 days in conformance with this order.